**Nika Aldrich**, OSB #160306
Email: naldrich@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1420 5th Avenue, Suite 3400
Seattle, WA 98101
Telephone:  206-622-1711
Facsimile:   206-292-0460

**Jason A. Wrubleski**, OSB #120524
Email: jwrubleski@schwabe.com
**Jason P. Evans**, OSB #193573
Email: jevans@schwabe.com
SCHWABE, WILLIAMSON & WYATT, P.C.
1211 SW 5th Avenue, Suite 1800
Portland, OR 97204
Telephone: 503-222-9981
Facsimile: 503-796-2900

        *Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **COLUMBIA SPORTSWEAR COMPANY**, an Oregon corporation, **COLUMBIA SPORTSWEAR NORTH AMERICA, INC.**, an Oregon corporation, and **COLUMBIA BRANDS USA, LLC**, an Oregon limited liability company**,**<br><br>        Plaintiffs,<br><br>    v.<br><br>**THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,**<br><br>        Defendant. | No. 3:25-cv-01299-AB<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT COLUMBIA UNIVERSITY'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(2) OR TRANSFER UNDER 28 U.S.C. § 1404(a)**<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

I.      INTRODUCTION ...................................................................................... 1

II.     RELEVANT FACTS ................................................................................. 3

        A.      The "Columbia" Trademark ........................................................... 3

        B.      Columbia University's 20-Year History of Soliciting Ongoing Obligations
                Between Itself and Columbia Sportswear .................................... 5

        C.      Columbia University's Breach of its Contractual Obligations .............................. 7

        D.      This Case's Substantial Connections to the State of Oregon ................................. 8

III.    LEGAL STANDARD FOR MOTION TO DISMISS ....................................................... 10

        A.      Motions to Dismiss Under Rule 12(b)(2) ..................................................... 10

        B.      Personal Jurisdiction .............................................................................. 11

IV.     ARGUMENT ON THE MOTION TO DISMISS ........................................................... 12

        A.      The Court has jurisdiction over Columbia Sportswear's breach of contract
                claim because the University has purposefully availed itself of the benefits
                of doing business with an Oregon resident corporation ........................................ 13

        B.      The University has purposefully directed its sales of infringing goods to
                Oregon, and this Court has jurisdiction over Columbia's infringement
                claims. ............................................................................................... 18

        C.      The exercise of personal jurisdiction over the University in this case is not
                unreasonable. ...................................................................................... 24

V.      LEGAL STANDARD FOR TRANSFER UNDER 28 U.S.C. § 1404(a) ...................................... 25

VI.     ARGUMENT CONCERNING TRANSFER UNDER 28 U.S.C. § 1404(A) .................................. 26

        A.      Columbia Sportswear's choice of forum weighs heavily against transfer ........................ 26

        B.      The convenience of the parties does not warrant transfer ...................................... 27

        C.      The convenience of witnesses does not warrant transfer ...................................... 28

        D.      Ease of access to sources of proof does not warrant transfer. ................................ 30

        E.      Familiarity with applicable law and other public interest factors do not
                warrant transfer. .................................................................................. 32

VII.    CONCLUSION ......................................................................................... 33

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
368 F.3d 1174 (9th Cir. 2004) ....................................................................12

*Adidas Am., Inc. v. Aviator Nation, Inc.*,
2020 U.S. Dist. LEXIS 142068 (D. Or. Aug. 5, 2020)........................31, 32

*Adidas Am. Inc. v. Cougar Sport, Inc.*,
169 F. Supp. 3d 1079 (D. Or. 2016) ........................................... *passim*

*Adobe Systems Inc. v. Trinity Software Distrib., Inc.*,
2012 WL 3763643 (N.D. Cal. Aug. 29, 2012) .......................................26

*Am., Inc. v. Ath. Propulsion Labs, LLC*,
2016 U.S. Dist. LEXIS 92770 (D. Or. July 18, 2016)..................29, 31, 32

*American Eagle Outfitters, Inc. v. Lyle & Scott Ltd.*,
2021 WL 4287997 (W.D. Pa. Sept. 21, 2021)........................................14

*AutoBidMaster, LLC v. Alpine Auto Gallery, LLC*,
2015 U.S. Dist. LEXIS 65202 (D. Or. April 8, 2015) .........................31, 32

*Balestrieri v. SportsEdTV, Inc.*,
2025 U.S. Dist. LEXIS 194373 (N.D. Cal. Sept. 16, 2025) ....................29

*Benchamde Knife Co. v. Benson*,
2010 U.S. Dist. LEXIS 23963 (D. Or. Mar. 15, 2010).............................31

*Blue Sky Color of Imagination, LLC v. Noteworthy Paper & Press, Inc.*,
2020 WL 12893717 (C.D. Cal. Feb. 28, 2020).......................................32

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ..............................................................13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985)..............................................................1, 12, 13, 14

*Burri Law PA v. Skurla*,
35 F.4th 1207 (9th Cir. 2022) ..........................................................10, 23

*Chloe v. Queen Bee of Beverly Hills, LLC*,
616 F.3d 158 (2d Cir. 2010)................................................................22, 23

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

*Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*,
   383 F.3d 110 (3rd Cir. 2004) ...................................................................................31

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) .................................................................................29

*Classic Instruments, Inc. v. VDO-Argo Instruments, Inc.*,
   700 P.2d 677 (Or. 1985) ..........................................................................................16

*CollegeNet, Inc. v. Common Application, Inc.*,
   355 F. Supp. 3d 926 (D. Or. 2018) ...........................................................................28

*Columbia Sportswear N. Am., Inc. v. Ventex Co.*,
   2019 U.S. Dist. LEXIS 168055 (D. Or. Sept. 30, 2019)............................................26

*Commodity Futures Trading Comm'n v. Savage*,
   611 F.2d 270 (9th Cir. 1979) ..............................................................................25, 26

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ....................................................................................24

*Davis v. Cranfield Aero. Sols., Ltd.*,
   71 F.4th 1154 (9th Cir. 2023) ......................................................................11, 13, 15

*Decker Coal Co. v. Commonwealth Edison Co.*,
   805 F.2d 834 (9th Cir. 1986) ........................................................................25, 28, 30

*DRW-LLC v. Golden Harvest Holdings, Inc.*,
   937 F. Supp. 2d 1307 (D. Or. 2013) ..........................................................................25

*Exact Order Specialties v. Glow Indus.*,
   2012 U.S. Dist. LEXIS 117170 (D. Or. Aug. 20, 2012)......................................31, 32

*Fatnani v. JPMorgan Chase Bank, N.A.*,
   743 F. Supp. 3d 1253 (D. Or. 2024) ....................................................................13, 15

*Fly v. Dollar Park & Fly*,
   469 U.S. 189 (1985)....................................................................................................3

*Ford Motor Co. v. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)............................................................................................11, 17

*Gherebi v. Bush*,
   352 F.3d 1278 (9th Cir. 2003) ...................................................................................25

*Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*,
   972 F.3d 1101 (9th Cir. 2020) ...................................................................................17

Page iii -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
              COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
              TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

*Heller Fin. Inc. v. Midwhey Powder Co., Inc.*,
  883 F.2d 1286 (7th Cir. 1989) ...................................................................................28

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
  72 F.4th 1085 (9th Cir. 2023) ........................................................................ *passim*

*Hirsch v. Blue Cross, Blue Shield*,
  800 F.2d 1474 (9th Cir. 1986) ........................................................................15, 16, 17

*Jones v. Fuentas*,
  2023 U.S. Dist. LEXIS 94451 (D. Or. May 30, 2023) ...........................................25

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000) ....................................................................................25

*LiquidAgents Healthcare, LLC v. Evanston Ins. Co.*,
  2021 U.S. Dist. LEXIS 66193 (D. Or. April 5, 2021) ............................................25

*LocusPoint Networks, LLC v. D.T.V., LLC*,
  2014 WL 3836792 (N.D. Cal. Aug. 1, 2014) ...........................................................17

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ....................................................................................25

*Mil-Ray v. EVP Int'l, LLC*,
  2021 U.S. Dist. LEXIS 128292 (D. Or. July 8, 2021).............................................25

*Mojis, Inc. v. Sazerac Brands, LLC*,
  2021 WL 12298483 (D. Colo. Mar. 31, 2021) ........................................................14

*NBA Props., Inc. v. HANWJH*,
  46 F.4th 614 (7th Cir. 2022) .....................................................................................22

*Patent Enforcement Group, LLC v. Chassis Tech, LLC*,
  2012 U.S. Dist. LEXIS 343 (D. Or. Jan. 3, 2012) ..................................................24

*Perdue Holdings, Inc. v. BRF S.A.*,
  45 F. Supp. 3d 514 (D. Md. 2014) .......................................................................13, 14

*Plant Food Co-Op v. Wolfkill Feed & Fertilizer Corp.*,
  633 F.2d 155 (9th Cir. 1980) ...............................................................................21, 22

*Santa Barbara Polo Club, Inc. v. Lifestyle Licensing B.V.*,
  2024 WL 3891798 (C.D. Cal. Aug. 19, 2024).........................................................14

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ................................................................................10, 24

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

*Shute v. Carnival Cruise Lines*,
    897 F.2d 377 (9th Cir. 1990) ................................................................................13, 17

*Silk v. Bond*,
    65 F.4th 445 (9th Cir. 2023) ...............................................................................18

*Smith v. Matorello*,
    2021 U.S. Dist. LEXIS 50057 (D. Or. Jan. 5, 2021) ...........................................16

*Stomp, Inc. v. NeatO, LLC*,
    61 F. Supp. 2d 1074 (C.D. Cal. 1999) .................................................................22

*Summit Foods, Inc. v. Viking Packaging Techs., Inc.*,
    2018 U.S. Dist. LEXIS 167363 (D. Or. Sept. 28, 2018)....................................26, 27

*Thabet Mgmt. v. Nautilus Ins. Co.*,
    2021 U.S. Dist. LEXIS 116236 (D. Or. June 22, 2021) .......................................25

*Truly Soc. Games, LLC v. Leaf Mobile, Inc.*,
    2023 U.S. Dist. LEXIS 228907 (D. Or. Dec. 11, 2023) .......................................27

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964).............................................................................................28

*Vicious Brands, Inc. v. Face Co., LLC*,
    2024 WL 4753287 (N.D. Cal. Nov. 12, 2024) ..................................................18, 22

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) ...............................................................................28

*Walden v. Fiore*,
    751 U.S. 277 (2014)............................................................................................13

*Wheel Pros, LLC v. Performance Tire*,
    2017 WL 6017292 (C.D. Cal. Apr. 24, 2017) ..................................................30, 31

*Wilwerding v. Edwards*,
    2008 U.S. Dist. LEXIS 115696 (D. Or. Aug. 13, 2008).......................................30

*Wilwerding v. Edwards*,
    2008 U.S. Dist. LEXIS 74502 (D. Or. Sept. 25, 2008) .......................................30

*Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*,
    2024 U.S. App. LEXIS 4636 (9th Cir. Feb. 28, 2024) .........................................21

**Statutes**

15 U.S.C. § 1051(a)(3)(C) .................................................................................................3

Page v -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

15 U.S.C. § 1115(b) ...............................................................................................................2, 4

15 U.S.C. § 1115(b)(5)-(6) ........................................................................................................4

15 U.S.C. § 1127.........................................................................................................................3

28 U.S.C. § 1404(A) ....................................................................................... *passim*

Lanham Act.............................................................................................................................32

**Other Authorities**

5 McCarthy on Trademarks and Unfair Competition § 32:141 (5th ed.) .......................................4

Fed. R. Civ. P. 12(b)(2)..........................................................................................................10

PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## I.    INTRODUCTION

There is no serious question this Court has personal jurisdiction over Columbia University on Columbia Sportswear's breach of contract and trademark claims.  The University attempts to brush under the rug its 20-year history of ***clearly and expressly soliciting*** a series of continuing trademark agreements from Columbia Sportswear in Oregon, including the 2023 agreement asserted in this lawsuit.  But as the Supreme Court has explained:

> [W]here the defendant deliberately has . . . created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there . . ..

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985) (citation and internal markings omitted).  The University does not cite a single case involving similar facts and declining to find jurisdiction, because its conduct is the very definition of "purposeful availment."

As to "purposeful direction" for the tort-based claims, the University's "*de minimis* sales" argument has been squarely and repeatedly rejected by the Ninth Circuit Court of Appeals, including in the University's own cited case law.  The University has alumni and other supporters throughout the country and around the world—including in Oregon—which is presumably why the University sought a trademark agreement that covers ***48 countries***, including the United States.  The University cannot sell infringing goods all over the globe and then claim immunity from suit anywhere but its own backyard.  That is why the sale of even one accused good into Oregon is sufficient to confer jurisdiction, as it confirms the University's capacity and willingness to serve Oregon markets in the regular course of business.

Either approach independently provides a basis for the Court to exercise jurisdiction over Columbia University in this case, with pendant jurisdiction attaching to all other claims.

The University has also failed to carry its burden to show that transfer is appropriate under Section 1404(a).  The University's transfer argument is essentially a bare assertion that this case should be heard in New York simply because that is where Columbia University is. The University ignores entirely that the *other* parties to this action—along with dozens of

Page 1 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

potential witnesses and voluminous relevant evidence—are located in Oregon. When geographically disparate parties dispute whose "home forum" should hear a case, and where—as here—the conduct at issue is nationwide (indeed, global) and not confined to any particular judicial district, courts must defer to the plaintiff's choice of forum, which, in this case, is the District of Oregon.

Instead of advancing meritorious jurisdictional or transfer arguments, the University spends much of its 35-page Motion bloviating on its view of the merits of this case,[1] as though a school's name on its baseball uniforms could confer national commercial rights in outdoor apparel. That is not how trademark law works. Columbia Sportswear has held federally registered, nationwide rights in the word mark COLUMBIA as used with the relevant clothing products for so long that those rights have become incontestable by statute. That means Columbia Sportswear's registration is "***conclusive*** evidence… of the registrant's ownership of the mark, and of the registrant's ***exclusive right*** to use the registered mark in commerce." (15 U.S.C. § 1115(b) (emphases added)). The University's repeated insinuation that it is somehow Columbia Sportswear who "infringes" is not only irrelevant to its Motion, but utterly wrong.

Similarly, Columbia University's surprising new position that including "the United States" in the parties' agreement was a "mutual mistake" is as baseless as it is irrelevant to the instant Motion. There was certainly no mistake at Columbia Sportswear, which carefully reviewed the University's proposed list of countries and even provided edits to the list, which the University accepted upon its own review. At no time before Columbia University filed the instant motion has anyone involved in the negotiations on either side suggested the presence of "and the United States" in the agreement—which appears twice, once in bold lettering at the top of the document—was an error.

---

[1] It is not clear what Sandy Koufax or Academy Award winners have to do with the University's Motion, or with this lawsuit at all.

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

But the University's arguments on these points are extraneous to issues presently before the Court.  Because the University is subject to personal jurisdiction in Oregon for the conduct complained of, and because it fails to meet its burden on a motion to transfer, the University's Motion should be denied in its entirety.

## II.    RELEVANT FACTS

### A.    The "Columbia" Trademark

The word "Columbia" did not originate with Columbia University.  Rather, it was coined about 300 years ago in Great Britain, and at the time was intended as a tongue-in-cheek sobriquet for the American colonies.  (ECF 21 (First Amended Complaint or "FAC") ¶ 34.)  As the Court is likely aware, "Columbia" has in the intervening centuries come to be recognized as a source identifier in a variety of different industries, such as filmmaking (Columbia Pictures), music (Columbia Records), broadcasting (CBS was founded as the Columbia Broadcasting System), and others.  The plaintiff in this case—Columbia Sportswear—is an apparel company that was founded under that name in 1938.  (*Id.* ¶ 23.)

This case involves use of the word "Columbia" as *a national trademark for apparel*. Columbia Sportswear is the owner of U.S. Trademark Registration No. 2,047,397, which covers use of the word mark COLUMBIA on, among other goods:[2]

> men's, women's and children's jackets, parkas, wind resistant jackets, pants, shorts, rain suits, ski bibs, jacket liners, gaiters, scarves, hats, gloves, mittens, shoes and boots, men's and women's turtlenecks, sweatshirts, sweatpants, ski suits, vests, shirts, belts and visors, and women's jumpers and skirts.

(*Id.* ¶ 30.)  Columbia's rights under this registration have become legally "incontestable" (*id.*), which means—among other things—the registration is "*conclusive* evidence of the registrant's exclusive right to use the mark" as described therein.  *Park 'n Fly v. Dollar Park & Fly*, 469 U.S. 189, 196 (1985) (emphasis in original).  To the extent others may use the mark on clothing, they

---

[2] Of course, this trademark protection was granted notwithstanding that Columbia University's baseball players had the word "Columbia" on their uniforms at the time.  Such use is irrelevant, as it is not a "use in commerce."  *See* 15 U.S.C. § 1051(a)(3)(C); 15 U.S.C. § 1127.

Page 3 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
            COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
            TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

are limited to specific geographic areas within the U.S. in which they can prove their own continuous and ongoing prior commercial use. *See* 15 U.S.C. § 1115(b)(5)-(6). And, absent a showing of fraud, abandonment, or other invalidating conditions not applicable here, Columbia Sportswear's own right to use the mark nationwide is not subject to challenge at all. *E.g. id.* at (b)(1)-(2); *see* 5 McCarthy on Trademarks and Unfair Competition § 32:141 (5th ed.) (collecting authority). Columbia Sportswear has also sought—and procured—trademark protection for its brand name in a large number of countries around the world.

Today, Columbia Sportswear's clothing products are sold in over 800 retail locations nationwide and around the globe, and consumers readily associate the term "Columbia" on such goods with the high quality and longevity of Columbia Sportswear's apparel:

 

 

(*See id.* at, *e.g.*, ¶¶ 23, 24, 26-28.)

Page 4 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

**B.      Columbia University's 20-Year History of Soliciting Ongoing Obligations Between Itself and Columbia Sportswear**

In the early 2000s, Columbia University sought to expand its production and distribution of university-themed merchandise beyond campus sales in Manhattan, but was repeatedly blocked in trademark offices around the world over Columbia Sportswear's superior rights for apparel.  (*See id.*, ¶¶ 10-14.)  In 2006, at the University's request, the parties executed the first in a string of co-existence agreements, in which Columbia Sportswear provided its consent for the University to register and use "Columbia"-formative marks in Korea, so long as such use was accompanied by the word "University," the University's shield or lion logo, or some other specifically-identified addition to avoid confusion with Columbia Sportswear (such additions referred to as the "University Indicia").  (*Id.* ¶ 10; ECF 25-1 at 14-15.[3])

In November 2014, Columbia Sportswear received an email from the University's counsel, who explained that "Columbia University has asked me to reach out to you again." (FAC ¶ 11; Kelly Decl.[4] Ex. 1 at 6.)  This time, the University sought Columbia Sportswear's consent to use "Columbia" on apparel in China, noting that "wholesalers and other retailers . . . are requiring documentary evidence of the University's right to use the marks in China, particularly in view of the Chinese trademark registrations owned by Columbia Sportswear." (*Id.*)  Accordingly, the University sought an agreement from Columbia Sportswear stating that Columbia Sportswear consented to the University's use of "Columbia," subject to similar restrictions on usage that the parties had agreed to previously.  (*Id.*)  In a later email in that same exchange, the University's counsel acknowledged that the parties "need each other's consents from time to time" (*id.* at 4), although Columbia Sportswear has never sought the University's consent to use the "Columbia" mark, in any way.  (Kelly Decl. ¶ 5.)

In the ensuing weeks, the parties negotiated a somewhat more robust agreement than they had used for Korea, including revisions to the list of approved "University indicia" and each side

---

[3] Page citations to briefs and other materials previously filed with the Court are to the pagination reflected in the blue ECF header, not to any internal footer pagination.

[4] Citations herein to "Kelly Decl." refer to the Declaration of Adam Kelly submitted herewith.

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

repeatedly acknowledging that Columbia University was not permitted to use the "Columbia" mark by itself on apparel.  (*See, e.g.,* Kelly Decl. Ex. 2.)  In the resulting February 11, 2015 agreement, the University undertook an affirmative contractual obligation that it would not use or register—or permit others to use or register—any "Columbia" mark in China without the University Indicia.  (FAC ¶ 11; ECF 25-1 at 21-22.)  At the University's express request, the agreement also contained a "notice and cure" provision, which obligated Columbia Sportswear to advise the University of any breach, and obligated the University to "terminate[] any licensee that fails to cure [a] default within the 90-day [notice] period."  (*Id.*)

The University reached out to Columbia Sportswear again in December 2019, this time because the Brazilian trademark office—also citing Columbia Sportswear's marks—had rejected the University's application to register a "Columbia" mark with the University's "shield" logo.  (FAC ¶ 12.)  The University again sought a letter of consent from Columbia Sportswear, which the University (through counsel) stated it believed "is consistent with the parties' informal co-existence agreement and prior consents the parties have granted each other over the years . . .." (*Id.*; Kelly Decl. Ex. 3 at 6.)[5]  After securing the University's written assurances that it was not planning to register or use any other "Columbia" marks (*id.* at 2-4), Columbia Sportswear executed the requested letter of consent.  (*Id.* at 1, 8-9; FAC ¶ 12.)

In June of 2023, the University reached out to Columbia Sportswear for the fourth time, essentially seeking to expand the parties' 2015 China agreement to nearly 50 additional countries, including the United States.  (FAC ¶ 13.)  The University stated its belief that this was "[i]n line with the parties' long-standing informal co-existence agreement."  (*Id.*; Kelly Decl. Ex. 4 at 2.)  The list of covered jurisdictions appeared twice in the University's proposal, and while the University now contends that including the United States was a "mutual mistake" (ECF

---

[5] Again, Columbia Sportswear has in fact never requested the University's consent for anything. (Kelly Decl. ¶ 5.)

Page 6 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

25 at 9, 17-18),[6] contemporaneous records show that both parties in fact examined the list prior to execution; corrected one error in the list; and noted no others.  (Kelly Decl. ¶¶ 9-11; Ex. 4 at 1-2 (addressing and acknowledging repetition of "Sweden" in both occurrences of the list); Ex. 5.)  For its part, Columbia Sportswear understood the University wanted to formalize the parties' co-existence understanding essentially worldwide—including in the United States—and the University has never suggested otherwise prior to the filing of its most recent motion.  (Kelly Decl. ¶¶ 10, 12.)  There was no "mistake," and in the resulting June 13, 2023 agreement, the University contractually agreed "that it shall not use or register, or allows its suppliers, customers or direct or indirect licensees or retailers to use or register, in the Territories [including the U.S.] the term COLUMBIA without the University Indicia."  (ECF 25-1 at 10.)  The agreement also reflected Columbia's continuing notice-and-cure obligations, as well as the University's continuing obligation to terminate suppliers who did not comply.  (*Id.*)

The parties' course of dealing on trademark matters has continued even after execution of the global 2023 agreement.  For example, the very next month, the University asked Columbia Sportswear to execute yet another consent letter to get around continuing rejections from the Indian Trademarks Registry.  (FAC ¶ 14; Kelly Decl. Ex. 6 at 2-3.)

### C.    Columbia University's Breach of its Contractual Obligations

In or around September 2024, Columbia Sportswear learned that, from its nationwide online store, the University or its representative had begun selling infringing, "Columbia"-branded apparel with no University Indicia, in direct breach of the parties' agreement:

---

[6] Notably, the University raises this argument for the first time in its renewed motion to dismiss Columbia's First Amended Complaint, and did not mention it in its prior motion as against the original Complaint (*compare* ECF 18), or in communications with Columbia Sportswear over the past year regarding the University's breach.  (*See* Kelly Decl. ¶ 12.)

Page 7 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460



(*See* FAC ¶¶ 46-55.)  As alleged in the FAC, the University sells infringing articles into Oregon, and it will readily fulfill any order from Oregon for those goods in the ordinary course of business.  (*Id.* ¶¶ 17-19.)  This allegation is supported by the fact that the University sponsors an Oregon alumni association—*i.e.* it is aware of a ready local market for its products—and the fact that the University or its representative have ***actually fulfilled*** orders for the infringing goods to Oregon.  (*Id.*)  While the University attempts in its Motion to downplay the *extent* of accused sales to Oregon, it has not submitted any evidence to show that such sales have not occurred. The University did not cure its breach when notified by Columbia Sportswear (*id.* ¶ 56), and this lawsuit followed.

### D.    This Case's Substantial Connections to the State of Oregon

Columbia Sportswear is and has been an Oregon-based company since its founding more than 85 years ago.  (Kelly Decl. ¶ 14.)  Columbia Sportswear's global headquarters are in Portland, and nearly all of the company's employees potentially relevant to this lawsuit work and reside around the Portland metro area.  (*Id.* ¶¶ 14, 17.)

Accordingly, many potential witnesses in this case, as well as voluminous documentary evidence, are located in and around Portland, Oregon.[7]  To begin with, all persons who have

---

[7] Discovery in this case has not yet commenced, and by identifying individuals and documents herein, Columbia Sportswear takes no position on the relevance, discoverability, or admissibility of any specific information or documents.  Columbia Sportswear reserves all rights.

Page 8 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

been involved with negotiating the various agreements described above and granting the University's requested consents reside in Oregon. (Kelly Decl. ¶ 18.) This includes Columbia's Associate General Counsel Adam Kelly, who was primarily responsible for negotiating the specific U.S. agreement whose breach is asserted in this case, among other agreements and exchanges with the University. (*Id.* ¶¶ 2, 3, 18.) The balance of Columbia Sportswear's legal department dedicated to trademark work is likewise located in Oregon, including at least one other Associate General Counsel and a paralegal who assists the company with its trademark agreements and filings. (*Id.* ¶ 19.) Each of these individuals maintains their books, notes, and emails in Oregon. (*Id.*)

Individuals and records associated with Columbia Sportswear's finance department have information relevant to its damages in this case, and are based in Oregon. The group responsible for managing data concerning sales, revenue, and profits is led by Columbia's Chief Accounting Officer Trenton Blair and includes 37 employees located in Oregon, along with their associated records. (*Id.* ¶ 20.) Columbia Sportswear does not maintain any of its corporate financial records outside of the State of Oregon. (*Id.*) Columbia Sportswear's product designers have information pertaining to its many specific uses of the "Columbia" mark, and are also located in Oregon. (*Id.* ¶ 22.) Columbia Sportswear's Apparel Design group is led by Creative Director Kelly Steinauer and comprises three employees responsible for graphic artwork design, all of whom are located in Oregon. (*Id.*)

Beyond specific product designs, Columbia Sportswear's marketing department is responsible for branding and trademark usage guidelines, reviewing market studies tracking name recognition and other metrics relevant to Columbia Sportswear's infringement claims, and related strategic initiatives. (*Id.* ¶ 23.) Columbia Sportswear's marketing department is led by Head of Marketing Matt Sutton and includes 92 full-time employees located in Oregon, along with their associated books and records. (*Id.*)

Page 9 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

Records of Columbia Sportswear's sales and shipments of relevant products bearing Columbia Sportswear's trademarks are maintained by its operations and shipping departments, which are also located in Oregon. (*Id.* ¶ 21.)

Essentially all of Columbia Sportswear's documents that may be responsive to any discovery request in this case are located in Oregon. Supply agreements for Columbia Sportswear's COLUMBIA-branded merchandise were negotiated and are maintained in Oregon. (*Id.* ¶ 24.) Documents concerning the scope and amount of Columbia Sportswear's relevant sales are located in Oregon. (*Id.*) Documents relevant to Columbia Sportswear's affected revenues are located in Oregon. (*Id.*) Documents that demonstrate Columbia Sportswear's own historical and ongoing uses of its trademarks are located in Oregon. (*Id.*) So, too, are documents sufficient to identify customers, distributors, manufacturers, and other entities that deal in or with Columbia Sportswear's branded merchandise. (*Id.*) Documents concerning Columbia Sportswear's trademark enforcement activities and practices are located in Oregon. (*Id.*) Materials concerning the design and manufacture of Columbia Sportswear's products themselves are located in Oregon. (*Id.*) Any investigations, focus groups, public opinion polls, market research, or other analysis relating to those products and/or Columbia Sportswear's trademarks are also in Oregon. (*Id.*)

## III.    LEGAL STANDARD FOR MOTION TO DISMISS

### A.    Motions to Dismiss Under Rule 12(b)(2)

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). However, "[b]efore discovery and in the absence of an evidentiary hearing, as here, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Burri Law PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022) (citation and internal quote marks omitted). "In determining whether the plaintiff has met that burden, a court must accept as true all uncontroverted

Page 10 -  PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

allegations in the plaintiff's complaint and must resolve all disputed facts in favor of the plaintiff." *Id.*

### B.    Personal Jurisdiction

The Court has specific personal jurisdiction over the University if the University has "taken some act by which it purposefully avail[ed] itself of the privilege of conducting activities within the forum State," so long as the claims at bar "arise out of or relate to the defendant's contacts with the forum." *Davis v. Cranfield Aero. Sols., Ltd.*, 71 F.4th 1154, 1161 (9th Cir. 2023), *quoting Ford Motor Co. v. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359-60 (2021).[8]  In other words, the defendant's contacts "must show that the defendant deliberately reached out beyond its home—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 592 U.S. at 359 (citation and internal quote marks omitted).  It is not necessary that a defendant's contacts "gave rise to" the claims at bar, so long as those claims bear some material "connection" to the defendant's forum-related conduct.  *Id.* at 361-62 ("None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do.").

Whether a defendant has "purposefully availed" itself of the forum is often analyzed under a "purposeful availment" test for purposes of contract claims, and under a "purposeful direction" test for purposes of tort-based claims (like trademark infringement).  However, "our cases do not impose a rigid dividing line," and this prong of the personal jurisdiction test "may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof." *Davis*, 71 F.4th at 1162 (citation and internal quote marks omitted).

Importantly, "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis . . . so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have

---

[8] Columbia Sportswear does not contend the University is subject to general personal jurisdiction in Oregon.

Page 11 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

personal jurisdiction." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). In other words, the Court need only find personal jurisdiction on one of Columbia Sportswear's claims to exercise jurisdiction over the University in this lawsuit.

## IV.  ARGUMENT ON THE MOTION TO DISMISS

The University argues both that it has not "purposefully availed" itself of the benefits of doing business in Oregon, and that it has not "purposefully directed" its activities to Oregon. The University is wrong on both counts.

On purposeful availment, where, as here:

> the defendant deliberately has . . . created continuing obligations between himself and residents of the forum, he ***manifestly*** has availed himself of the privilege of conducting business there, and because his activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Burger King*, 471 U.S. at 475-76 (emphasis added) (citation and internal quote marks omitted). That is the beginning and the end of the analysis. The University relies solely on cases in which the defendant had ***not*** literally reached across state lines to solicit an ongoing contractual relationship, and so the court examined minutiae like choice of law provisions and the geographic locus of negotiations to determine if "purposeful availment" was nonetheless present. But in this case, the University's repeated, express solicitation of continuing obligations between itself and Columbia Sportswear could not be clearer (*see* Kelly Decl. Exs. 1-6), and falls directly within the holdings of *Burger King* and other controlling authority.

On purposeful direction, the University's "de minimis sales" argument is flat wrong as a matter of law. Even if the University's numbers were credible (which, as detailed below, they are not), the Ninth Circuit has made clear that just one sale into a forum state constitutes purposeful direction, so long as it was made in the regular course of operations. The University also has a well-established base of customers in Oregon, and has offered goods on a nationwide-website to appeal to those consumers and others. The University subjected itself to jurisdiction

Page 12 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

here when it sold accused products into Oregon in the normal course of its business, which confirmed its capacity and willingness to serve the Oregon market with those goods.

> **A.    The Court has jurisdiction over Columbia Sportswear's breach of contract claim because the University has purposefully availed itself of the benefits of doing business with an Oregon resident corporation.**

In its Motion, the University studiously avoids any discussion of at least one critical fact: throughout the parties' 20-year course of dealing recounted in Section II.B above, it was the University—not Columbia Sportswear—who reached out across state lines, over and over again, to solicit the ongoing agreements at issue in this case.  As both the U.S. Supreme Court and the Ninth Circuit Court of Appeals have explained, ***that is "purposeful availment" in a nutshell***. "[W]ith respect to interstate contractual obligations, we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (citation and internal quote marks omitted).  Indeed, "a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business." *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir. 1990) (collecting authority), *rev'd on other grounds*, 499 U.S. 585 (1991).

In ***every*** "purposeful availment" case cited by the University and finding no personal jurisdiction, the tribunal relied on squarely opposite facts—*i.e.* the plaintiff or a third party from the forum state initiating dealings with the defendant, not *vice versa*—to reach that conclusion.[9]

---

[9] *See Davis*, 71 F.4th at 1163-64 ("And Cranfield did not solicit the business with Tamarack. Instead, Tamarack initiated contact with Cranfield by phone and email."); *Boschetto v. Hansing*, 539 F.3d 1011, 1014-15 (9th Cir. 2008) (one-off eBay sale where plaintiff buyer contacted defendant seller); *Fatnani v. JPMorgan Chase Bank, N.A.*, 743 F. Supp. 3d 1253, 1272 (D. Or. 2024) (relying on *Davis*, noting "Plaintiff has not alleged that Intertrust Corporate sought out business with Ikkurty or Javia LLC in Oregon…"); *Perdue Holdings, Inc. v. BRF S.A.*, 45 F. Supp. 3d 514, 516 (D. Md. 2014) ("The Court… 'accords special weight to the fact' that Plaintiff initiated the contractual relationship that eventually gave rise to this dispute.") (citation omitted, collecting authority); *see also Walden v. Fiore*, 751 U.S. 277, 288-89 (2014) ("Petitioner never… contacted anyone in, or sent anything… to Nevada.").

Page 13 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

There is also no question that the required "continuing" relationship or obligations are present here, *cf. Burger King*, 471 U.S. at 473, unlike the one-off transactions at issue in much of the University's case law.  Throughout the parties' 20-year history, the University repeatedly undertook continuing obligations to Columbia Sportswear, including the obligation not to use the latter's "Columbia" mark except as agreed and the obligation to terminate non-compliant licensees, in return for covenants not to sue and other continuing obligations from Columbia Sportswear.  (*See* FAC ¶¶ 11, 13; ECF 25-1 at 9-11 & 21-22.)  Such obligations are typical of trademark "co-existence" agreements, which courts routinely find sufficient to establish personal jurisdiction.  *See, e.g., Santa Barbara Polo Club, Inc. v. Lifestyle Licensing B.V.*, 2024 WL 3891798, at *5 (C.D. Cal. Aug. 19, 2024) ("[R]espondents purposefully availed themselves of the privilege of conducting business in California by requesting petitioners' assistance under the 1997 [Co-Existence] Agreement, relying on and benefitting from the Agreement…, and having continuing obligations to petitioners under the Agreement."); *American Eagle Outfitters, Inc. v. Lyle & Scott Ltd.*, 2021 WL 4287997, at *9 (W.D. Pa. Sept. 21, 2021) (remote negotiation of trademark co-existence agreement constituted purposeful availment); *see also Mojis, Inc. v. Sazerac Brands, LLC*, 2021 WL 12298483, at *8 (D. Colo. Mar. 31, 2021) (trademark coexistence agreements "create continuing obligations among Defendant . . . and several Colorado companies, such as working with Colorado entities to correct any circumstance that leads to instances of actual confusion . . .") (citation and internal markings omitted).[10]

"[W]here the defendant deliberately has engaged in significant activities within a State, *or* has created continuing obligations between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there . . .."  *Burger King*, 471 U.S. at

---

[10] On this point, the University cites to *Perdue Holding. v. BRF* (ECF 25 at 25), incorrectly suggesting the court in that case declined to find jurisdiction because an agreement did not require "payments," "audits," or "meetings."  But *Perdue* involved an agreement **solicited by the plaintiff** (a fact the court gave "special weight") for the defendant to "**refrain** from business activities in the forum state" outright.  *See Perdue,* 45 F. Supp. 3d at 516-17 (emphasis added).  This case is nothing like *Perdue*.

Page 14 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO
            COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
            TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

475-76 (emphasis added, citation and internal markings omitted). Here, the University has deliberately created continuing obligations between itself and Columbia Sportswear, and so manifestly has availed itself of the privilege of conducting business here.

In an effort to avoid this clear-as-bells result, the University argues the Court's focus should be on whether the defendant *expressly* subjected itself to forum state law and the physical location of the parties, presenting a strained analysis of these points under an argumentative list of lettered items that it misleadingly terms the "*Davis* factors":

> With respect to analyzing purposeful availment based on a contract, *Davis* is instructive. There, the Ninth Circuit looked to factors such as:
>
> (a) Contract negotiations: whether the negotiations reflected any intent to avail the defendant of the forum state's laws;
> (b) Contract terms: whether any contract terms invoke the law of the forum state;
> (c) Contemplated consequences: whether any of the contract's contemplated consequences suggest the defendant sought to benefit from the forum's laws;
> (d) Actual course of dealings: whether any activities relating to the contract occurred in the forum state.

(ECF 25 at 24-25, citing *Davis v. Cranfield Aero.*, 71 F.4th 1154 (9th Cir. 2023).) But *Davis* does not support the University's reading. There, unlike this case, the defendant had not breached one of many continuing agreements that it expressly solicited from a forum resident, and so the Ninth Circuit considered whether a **single** contract with a **non-party** resident nonetheless reflected purposeful availment for purposes of the plaintiffs' claims.[11] Even in that context, the Court looked to many diverse facts that have nothing to do with the parties' geographic location or what law governed the agreement at issue. *See Davis*, 71 F.4th at 1163-65 (relying, *inter alia*, on the lack of any prior contacts and fact that defendant "did not solicit the business" with the resident third party). Express choice of law provisions generally are not an important part of the "purposeful availment" analysis. *Compare, e.g, Hirsch v. Blue Cross, Blue Shield*, 800 F.2d 1474, 1476-77, 1479-80 (9th Cir. 1986) (considering agreement between

---

[11] *See also Fatnani*, 743 F. Supp. 3d at 1272 (Simon, J.) (describing the *Davis* analysis as "instructive" when dealing with "a contractual relationship [with] a resident third party").

Page 15 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO
            COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
            TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

defendant Missouri insurer and an employer in Kansas, but finding purposeful availment *in California* based on post-contract enrollment of California employee).

While not necessary to the Court's determination, the University is in any event incorrect to assert that the parties' agreement "in no way invokes Oregon law" (ECF 25 at 19). The agreement implicates Oregon law because it provides rights and privileges with respect to trademark laws in "the United States." Oregon is in "the United States" and has specific trademark laws that protect its resident Columbia Sportswear's rights that are subject to the agreement. *See, e.g., Classic Instruments, Inc. v. VDO-Argo Instruments, Inc.*, 700 P.2d 677 (Or. 1985). Indeed, **this lawsuit** contains Oregon state law claims alleging trademark infringement and unfair competition—the very kinds of claims the parties sought to bargain around. (*See* ECF 21 at 34.) The University has now breached that bargain, and its effort to avoid local consequences by claiming the agreement had nothing to do with Oregon rings hollow.[12]

Nor is personal jurisdiction defeated because the University does not have offices in Oregon, or because its representatives did not physically travel to Oregon to negotiate with Columbia Sportswear. *E.g. Hirsch*, 800 F.2d at 1478-79 ("It is not required that a defendant be physically present within, or have physical contacts with, the forum . . ..") (collecting authority, internal quote marks omitted). In *Hirsch*, the defendant insurer "ma[de] much of its physical absence from California, and the fact that contract negotiations between it and [the plaintiff's employer] occurred outside California." *Id.* at 1480. Notwithstanding, "by voluntarily and knowingly obligating itself" to a California resident,[13] the insurer "purposefully availed itself of

---

[12] Oregon law also likely governs the agreement itself under conflicts of laws principles, an issue that will be addressed at another stage in the litigation. *See, e.g., Smith v. Matorello*, 2021 U.S. Dist. LEXIS 50057, at *58-60 (D. Or. Jan. 5, 2021) (Oregon law governs if no conflict with the other forum's laws, and then follows the "most significant relationship" test).

[13] There is no question here that the University knew it was dealing with an Oregon resident at all relevant times—for example, the parties' letter agreements have all been on Columbia Sportswear letterhead bearing its Portland, Oregon address. (*E.g.* ECF 25-1 at 9-12, 14, 21-22.)

Page 16 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

the benefits and protections of that forum," *id.*, and so the court reversed the district court's finding of no personal jurisdiction.  As the Ninth Circuit further explained over 30 years ago:

> [T]the reality of modern commercial life is that many transactions take place solely by mail or wire across state lines, obviating the need for physical presence in the state toward which the defendant's activities are directed.  Thus, the [Supreme] Court has held that the physical absence of the defendant and the transaction from the forum cannot defeat the exercise of personal jurisdiction.

*Shute*, 897 F.2d 377, 382 (9th Cir. 1990), citing *Burger King*, 471 U.S. at 476 (finding jurisdiction notwithstanding defendant had no physical connection to forum state); *see also, e.g., LocusPoint Networks, LLC v. D.T.V., LLC*, 2014 WL 3836792, at *4-8 (N.D. Cal. Aug. 1, 2014) (providing detailed analysis and finding personal jurisdiction despite no negotiations taking place in forum state).

Finally, the University attempts to brush aside its 20-year history of soliciting agreements from Columbia Sportswear in a few short sentences, baldly stating that "none of these agreements give rise or relate to any of Plaintiffs' claims and are thus irrelevant to jurisdiction . . .."  (ECF 25 at 15-16.)  But it is black-letter law that, in assessing purposeful availment, "courts must evaluate the parties' entire course of dealing, not solely the particular contract or tortious conduct giving rise to the claim . . .."  *Global Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1108 (9th Cir. 2020) (internal citations omitted) (finding personal jurisdiction based on multi-year course of dealing); *see also Ford Motor Co.*, 592 U.S. at 361-62 ("Ford's causation-only approach finds no support in this Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities.").  "Arise out of *or relate to*" means exactly that, and the University cannot credibly assert that Columbia Sportswear's claims do not "relate to" the parties' longstanding trademark relationship.  Indeed, in proposing the specific 2023 agreement underlying Columbia Sportswear's breach claim—which was itself based squarely on the parties' 2015 China contract (Section II.B, above)—the University itself stated its view that it was "[i]n line with the parties' long-standing informal co-existence agreement."  (FAC ¶ 13; Kelly Decl. Ex. 4 at 2.)  The Court should reject the

Page 17 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

University's invitation to ignore the parties' 20-year course of dealing as somehow irrelevant to Columbia Sportswear's claims. *See, e.g., Silk v. Bond*, 65 F.4th 445, 457-58 (9th Cir. 2023) ("A decades-long business relationship with a California-based service provider ***clearly*** constitutes purposeful availment of the privilege of doing business in California.") (emphasis added).

The University's decades-long trademark relationship with an Oregon-based counterparty clearly constitutes purposeful availment of the privilege of doing business in Oregon. Columbia's claims arise out of or relate to that relationship, and this Court thus has personal jurisdiction over the University for purposes of Columbia Sportswear's contract claim.

**B.      The University has purposefully directed its sales of infringing goods to Oregon, and this Court has jurisdiction over Columbia's infringement claims.**

As a separate and independent basis for exercising jurisdiction over the University in this lawsuit, the University has also purposefully directed its sales of infringing goods to Oregon. As detailed below, the University's "*de minimis* sales" theory is contrary to controlling authority, and must be rejected. The Court must also accept as true Columbia Sportswear's plausible, uncontroverted allegations that the University readily sells infringing goods to Columbia University alumni and others residing in Oregon, and it makes no difference who made the specific purchases confirming the University's capacity and willingness to do so.

Generally, "[c]ourts have long recognized 'distribution in the forum state of goods originating elsewhere' as a form of purposeful direction… ." *Vicious Brands, Inc. v. Face Co., LLC*, 2024 WL 4753287, at *7 (N.D. Cal. Nov. 12, 2024), quoting *Schwarzenegger*, 374 F.3d at 803. The Ninth Circuit has provided recent guidance on this point specifically for trademark cases involving nationwide online sales, holding "that if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1092-93 (9th Cir. 2023); *see also id.* at 1089 (allegation that defendant "made an unknown number of sales to Arizona residents," predicted to

Page 18 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

represent a "sporadic smattering of sales," was in relevant part "sufficient to support the exercise of specific personal jurisdiction" in Arizona).

In its First Amended Complaint, Columbia Sportswear alleges, *inter alia*:

> As part of the University's and/or its vendors' regular course of business, any order for Infringing Merchandise placed through the University's online webstore from Oregon is fulfilled, with "all products . . . packed and shipped from the B&N Campus Store (i.e., from the University's campus in New York)" (ECF 18 at 20) to the purchaser in Oregon.

(FAC ¶ 18.)

The First Amended Complaint moreover pleads that "in or around October 2025, the 'Columbia University Store' fulfilled orders for three articles of Infringing Merchandise by shipping the articles directly from an address on the University's campus in New York, New York to an address in Portland, Oregon." (*Id.*) The orders were confirmed by correspondence bearing the University's name and insignia as follows:



(*Id.*) The FAC further pleads that:

> By its own admission, about 0.5% of Columbia University's student body—which includes students from all over the world—are from Oregon (ECF 18-1 at ¶ 9), which presumably has been roughly true of every graduating class for the past several decades. Thus, the University is aware that hundreds if not thousands of its alumni reside in Oregon, and can be expected—along with their family members and other well-wishers—to procure University-themed merchandise from the University's online store. Indeed, Columbia University has an Oregon-based alumni association that is sponsored by the University. . . . [T]he University is subject to personal jurisdiction in this Court because it has placed and is placing the Infringing Merchandise into the stream of commerce, with the expectation that those articles will be sold to Oregon residents in the regular course of business.

(*Id.* ¶ 19.) In the materials submitted with its Motion, the University does not controvert these allegations. For example, it does not submit any evidence that the referenced October 2025 sales did not occur, or that it is not aware of a sponsored community of University alumni in Oregon providing a ready market for other online sales. The University presumably has access to its

Page 19 -  PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

own or its representative's sales records, but has not submitted evidence to show that it has not sold these products into Oregon at all.

Instead, the University takes pains to downplay the *volume* of its Oregon sales, arguing through a series of tenuous statistical inferences that the number of accused products sold into Oregon must be "Near Zero" (ECF 25 at 12),[14] and therefore that such sales allegedly did not occur "in the regular course of business." (*See id.* at 12-13, 28-30.) As an initial matter, it is unclear how the University can purport to provide such a showing at this stage, given that the accused products identified in Columbia's FAC are expressly described as "[n]on-exhaustive examples" (FAC ¶¶ 47, 59), and not the entirety of the University's infringing product line. Indeed, the University does not even fully account for the products Columbia Sportswear *did* identify. (*See* ECF 25, p. 13 (stating that "for ***most*** of the Accused Products, there were, at most, 48 units of each Accused Product approved for sale" (emphasis added), saying nothing of the other accused products); *see also* ECF 25-2 ¶ 8 (similar).) Moreover, Columbia Sportswear introduced several *additional* exemplary infringing products in its November 3 Amended Complaint (*see* ECF 24-1 at ¶¶ 56-57), but the University relies for its statistics on recycled declarations that were executed nearly two weeks earlier, on October 22. (*See* ECF 25-1 at 7, 25-2 at 5; *compare* ECF 18-1, 18-2.) The University's numbers obviously are not reliable.

More importantly, however, as the Ninth Circuit has repeatedly and unambiguously made clear, "***there is no 'small percentage of sales' exception*** to the purposeful direction principles" animating the personal jurisdiction analysis. *Herbal Brands*, 72 F.4th at 1095 (emphasis added), quoting *Alya, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 981 (9th Cir. 2021). In *Herbal Brands*, the Ninth Circuit further explained that "[t]he outcome of the express-aiming inquiry ***does not depend on the number of sales made*** to customers in the forum," and expressly acknowledged that even "one sale" into the forum state may suffice so long as that sale was made in the ordinary course of business. *Herbal Brands*, 72 F.4th at 1095 (emphasis added); *see also id.* at

---

[14] It is undisputed that the University has *in fact* sold accused products into Oregon.

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

1092-93 (articulating standard, referring to when a defendant "sells *a* physical product") (emphasis added).  And yet again last year—in another case involving nationwide online sales— the Ninth Circuit expressly rejected another "de minimis sales" argument, explaining that "***the percentage of sales is not the relevant inquiry***."  *Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*, 2024 U.S. App. LEXIS 4636, at *3-4 (9th Cir. Feb. 28, 2024) (emphasis added, reversing dismissal for lack of personal jurisdiction).  Instead, the court found jurisdiction where the defendant "accepts orders from California residents and delivers its products there" (*id.*), which is exactly what Columbia Sportswear alleges the University does in Oregon.  The University's "de minimis sales" argument must be rejected.

Rather than depending on any number or percentage of forum sales, the "ordinary course of business" inquiry asks whether a transaction reflects "a genuine attempt to serve the market," as opposed to "a truly isolated sale."  *Herbal Brands*, 72 F.4th at 1095.  To illustrate this distinction, the *Herbal Brands* court referred to its prior decision in *Plant Food Co-Op v. Wolfkill Feed & Fertilizer Corp.*, 633 F.2d 155, 159 (9th Cir. 1980).  *Id.*  In that case, the court considered the appeal of a Canadian fertilizer dealer (defendant Pillsbury) who sold product to a Washington middleman, who sold it to another Washington middleman, all to fulfill an order from another dealer in Montana (plaintiff Plant Food Co-Op), whose property was damaged by the product.  *Plant-Food Co-Op*, 633 F.2d at 156-57.  In affirming personal jurisdiction over Pillsbury in Montana, the court explained:

> If the sale of a product of a distributor is not an isolated occurrence, but ***arises from the efforts of the distributor to serve, directly or indirectly, the market for its products in other states***, it is not unreasonable to subject it to suit in one of those states if its allegedly defective merchandise has there been the source of injury… .

*Id.* at 159 (emphasis added).  To find jurisdiction under this standard, the court relied merely on the fact that "Pillsbury knew, at least when it accepted the shipping instructions, that the product it sold was destined for Montana," noting that "Pillsbury could have objected or made other arrangements if it found exposure to Montana's long-arm jurisdiction unacceptable."  *Id.* at 159-

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

60.  Similarly, here, the University could easily decline to fulfill orders to Oregon (or direct its representative to decline such orders), but it does not.  The reason the University has a nationally-accessible online store is—of course—"to serve . . . the market for its products in other states," *id.*, and its sales to Oregon are no less "in the ordinary course of business" than its sales to any other state.

The University also attempts to discount the specific October 2025 sales pled in Columbia's Amended Complaint, speculating that the purchases were "presumably made by Plaintiffs or their attorneys" and therefore should not count.  (ECF 25 at 28.)  Initially, it must be noted that nothing in Columbia Sportswear's pleadings or in the declarations submitted by the University indicates that to be the case.  But even assuming *arguendo* that it is, the University's argument fails for at least two reasons.

First, while some district courts prior to *Herbal Brands* have discounted such sales as reflecting an attempt to "manufacture jurisdiction," that is not controlling law.  Many courts have acknowledged that where a defendant is shown to sell goods into a forum state, it does not matter who made the purchases supporting that showing.  Consistent with the Ninth Circuit's reasoning in *Herbal Brands*, where a company has an online store, it is subject to jurisdiction in a state where it "unequivocally asserted *a willingness to ship goods* [] and established *the capacity to do so*."  *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624-25 (7th Cir. 2022) (providing detailed discussion rejecting "manufactured jurisdiction" argument, collecting authority) (emphases added); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 162-63, 171 (2d Cir. 2010) (single item shipped to assistant at Plaintiff's law firm supported personal jurisdiction); *Vicious Brands,* 2024 WL 4753287 at *11 (accused products shipped to "Plaintiff's counsel's San Francisco Office" supported jurisdiction in N.D. Cal.); *Stomp, Inc. v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1076 n.2, 1078 (C.D. Cal. 1999) (purposeful direction supported by sales made to plaintiff's "President and a friend of his").  In *Herbal Brands*, the Ninth Circuit acknowledged

Page 22 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

the holdings of both *NBA Properties* and *Chloe*, with no indication that the approach taken by those courts was incorrect.  *See Herbal Brands*, 72 F.4th at 1095-96.

Second, unlike the cases relied on by the University, Columbia Sportswear does not attempt to premise jurisdiction solely on the specifically-pled October 2025 sales.  Rather, Columbia advances plausible factual allegations that the University has sold accused articles into Oregon generally, including at least because some hundreds or thousands of Columbia University alumni live in Oregon.  (FAC ¶¶ 18-19.)[15]  If the University truly had not sold ***any*** of the accused products into Oregon other than the specific sales pled in Columbia Sportswear's Amended Complaint, it could simply have adduced sales records or testimony showing as much directly.  It has not, and so Columbia Sportswear's uncontroverted, plausible factual allegations that it *has* made such sales must be accepted as true.  *Burri Law*, 35 F.4th at 1213 (court "must accept as true all uncontroverted allegations in the plaintiff's complaint and must resolve all disputed facts in favor of the plaintiff"); *see also Herbal Brands*, 72 F.4th at 1089 (finding sufficient allegations that defendant "made an unknown number of sales to Arizona residents" and "made no effort to stop selling to Arizona residents" after receiving notice of infringement).

Thus, even assuming *arguendo* that the undisputed sales of three articles into the State of Oregon were made to Columbia Sportswear, that is not an attempt to *manufacture* jurisdiction.  In this case, specific purchases of goods within the state merely *confirm* that jurisdiction exists.

Because the University has sold infringing goods into Oregon in the ordinary course of business and because Columbia Sportswear's claims arise out of or relate to those sales,[16] the Court has personal jurisdiction over the University on Columbia's infringement claims.

---

[15] This fact supports jurisdiction because it shows a ready market in Oregon for the University's accused goods sold on its nationally-accessible online store.  Contrary to the University's disingenuous argument, Columbia Sportswear does not "allege that the general existence of alumni in Oregon confers specific jurisdiction over Columbia."  (*Cf.* ECF 25 at 32.)

[16] *See Herbal Brands*, 72 F.4th at 1096 (trademark claims "clearly arise out of and relate to Defendants' conduct of selling those same products to Arizona residents").

Page 23 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

C.    **The exercise of personal jurisdiction over the University in this case is not unreasonable.**

Once a plaintiff has shown purposeful availment or direction and that its claims arise out of or relate to the defendant's forum contacts, "the burden then shifts to the defendant to 'present *a compelling case*' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (emphasis added), quoting *Burger King*, 471 U.S. at 477; *accord Herbal Brands*, 72 F.4th at 1090. "Defeats of otherwise constitutional personal jurisdiction are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Patent Enforcement Group, LLC v. Chassis Tech, LLC*, 2012 U.S. Dist. LEXIS 343, at *16 (D. Or. Jan. 3, 2012) (citation and internal markings omitted).

In its Motion, the University does not advance any separate argument that the Court's exercise of jurisdiction would be unreasonable, but instead "incorporates[] by reference" other sections of its brief that it contends are relevant to that determination. (ECF 25 at 33-34.) Responding in kind as to what the University terms "factor 1," as detailed in Sections IV.A and IV.B above, the University has plainly interjected itself into Oregon affairs, including through its infringing sales and its 20-year history of agreements creating trademark interdependence with a major Oregon employer. (*See* Kelly Decl. ¶ 15, Ex. 7 (state website explaining that as "[h]ome to Nike, adidas America, and Columbia Sportswear, Outdoor Gear & Apparel is one of the iconic industries of Oregon," with supporting statistics).)[17]

The University relies solely on its Section 1404(a) transfer argument for the remainder of its "fair play and substantial justice" factors (ECF 25 at 34), and so these facts and others are discussed more fully in Section VI below.

---

[17] The Court may take judicial notice of the contents of this government website. *E.g. Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010).

Page 24 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

## V.    LEGAL STANDARD FOR TRANSFER UNDER 28 U.S.C. § 1404(A)

"For the convenience of parties and witnesses, in the interest of justice, a court may transfer any civil action to any other district or division where it may have been brought . . .."  28 U.S.C. § 1404(a).  The party seeking transfer—here, the University—bears "the burden to justify by particular circumstances that [this] forum [is] inappropriate."  *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (citation omitted).

In determining whether to transfer, "[c]ourts may consider: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations."  *Jones v. Fuentas*, 2023 U.S. Dist. LEXIS 94451, at *4 (D. Or. May 30, 2023); *see also Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 499 (9th Cir. 2000) (listing similar factors).

However, "there is a strong presumption in favor of plaintiff's choice of forums" (*Gherebi v. Bush*, 352 F.3d 1278, 1303 (9th Cir. 2003) (citation and internal markings omitted), *vacated on other grounds*, 542 U.S. 952 (2004)), and "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986); *see also, e.g., Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987) ("[G]reat weight is generally accorded plaintiff's choice of forum… ."); *Thabet Mgmt. v. Nautilus Ins. Co.*, 2021 U.S. Dist. LEXIS 116236, at *11 (D. Or. June 22, 2021) ("Courts apply a strong presumption in favor of honoring the plaintiff's choice of forum.") (citation and internal markings omitted); *LiquidAgents Healthcare, LLC v. Evanston Ins. Co.*, 2021 U.S. Dist. LEXIS 66193, at *7-8 (D. Or. April 5, 2021) (similar, plaintiff's choice "weighs heavily" against transfer); *Mil-Ray v. EVP Int'l, LLC*, 2021 U.S. Dist. LEXIS 128292, at *30 (D. Or. July 8, 2021) (similar); *DRW-LLC v. Golden Harvest Holdings, Inc.*, 937 F. Supp. 2d 1307, 1317 (D. Or. 2013) (similar).

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

Whether to permit transfer is within the Court's discretion, and "only in rare instances have appellate courts overridden a trial court's decision not to transfer." *Commodity Futures*, 611 F.2d at 279 (collecting authority).

## VI.    ARGUMENT CONCERNING TRANSFER UNDER 28 U.S.C. § 1404(A)

The University has failed to satisfy its burden to show that transfer is appropriate, and its transfer request must also be denied.

### A.    Columbia Sportswear's choice of forum weighs heavily against transfer.

"Plaintiff, an Oregon company, has chosen Oregon as its preferred forum for this litigation and that decision is entitled to special deference." *Summit Foods, Inc. v. Viking Packaging Techs., Inc.*, 2018 U.S. Dist. LEXIS 167363, at *11-12 (D. Or. Sept. 28, 2018), citing *Adidas Am. Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1096 (D. Or. 2016) (in trademark case concerning nationwide infringement, assigning "great weight" to plaintiff's choice).

Notwithstanding, the University dedicates just five lines of text in its 35-page Motion arguing that this factor should be "closer to neutral" in the Court's analysis.  (ECF 25 at 38.) The sole support cited for this assertion is *Adobe Systems Inc. v. Trinity Software Distrib., Inc.*, 2012 WL 3763643 (N.D. Cal. Aug. 29, 2012), which recognized the "strong presumption in favor of a plaintiff's choice," *id.* at *8-9, but recited the well-known caveat that "if the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter," then the plaintiff's choice is entitled to less deference.  *Id.* (citations omitted).[18]

That reasoning does not apply here, as Oregon of course has an interest in the parties and subject matter of this litigation.  At risk of stating the obvious, Columbia Sportswear is an Oregon company.  *See, e.g., Columbia Sportswear N. Am., Inc. v. Ventex Co.*, 2019 U.S. Dist. LEXIS 168055, at *23-24 (D. Or. Sept. 30, 2019) ("A forum state has a ***strong interest*** in

---

[18] Nothing in *Adobe* suggests that the court's decision was based on the "infringement occurr[ing] elsewhere" (ECF 25 at 38), and in any event, this action concerns the University's infringement of Columbia's trademark rights *nationwide and globally*, not in any one state.

Page 26 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

protecting its citizens from the wrongful acts of nonresident defendants.") (emphasis added), citing *Ziegler v. Indian River Cty.*, 64 F.3d 470, 475 (9th Cir. 1995) (internal markings omitted). Not only that, but as detailed in Section IV.C above, Columbia Sportswear is a major Oregon employer and an important player in the state's outdoor apparel industry. *See Truly Soc. Games, LLC v. Leaf Mobile, Inc.*, 2023 U.S. Dist. LEXIS 228907, at *17-18 (D. Or. Dec. 11, 2023) ("Oregon has an interest in protecting the commercial interests of businesses in the state.") (collecting authority). Events underlying Columbia Sportswear's causes of action have also occurred in Oregon, including certain infringing sales and the negotiation and drafting of the 2023 agreement underlying Columbia's breach claim, to say nothing of the parties' 20-year course of dealing before that. (*See* pp. 5-8 above.)

The University essentially does not even *attempt* to demonstrate that Oregon "has no particular interest in the parties or the subject matter," and thus has provided no reason to depart from the strong presumption in favor of Columbia Sportswear's choice of forum. *See Summit Foods*, 2018 U.S. Dist. LEXIS 167363 at *11-12; *Adidas*, 169 F. Supp. 3d at 1096.

### B.    The convenience of the parties does not warrant transfer.

The University spends the majority of its Section 1404(a) analysis focusing on the "Convenience of the Parties" (ECF 25 at 36), and specifically why New York would purportedly be a more convenient forum for the University itself. But the University is not the only party to this lawsuit—as detailed at pp. 8-10 above, Columbia Sportswear and essentially all of its operations, documents, and employees are located in and around the Portland metro area.[19] The cost of litigating, attending hearings, and hosting a trial in Manhattan will be significantly greater for Columbia Sportswear than the cost of litigating in Oregon.[20]

---

[19] The University points out that Columbia Sportswear products are *retailed* in the state of New York (*e.g.* ECF 25 at 38)—as they are nationwide—but does not purport to explain what Columbia Sportswear's retail outlets could possibly have to do with this case.

[20] Moreover, given the relative costs of hotels and services in Portland versus Manhattan, the increased cost on Columbia Sportswear from litigating in New York would greatly outweigh any increased cost to the University of litigating in Oregon.

Page 27 -    PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

As such, transfer to the Southern District of New York "would merely shift rather than eliminate" any purported inconvenience, forcing Columbia Sportswear to incur the same burden and expense that the University alleges for litigating in Oregon. *Decker Coal. Co.*, 805 F.2d at 843 (affirming denial of transfer where "[a]lthough the [defendant's] liability witnesses may be located in Illinois and Indiana, the [plaintiff's] damage witnesses primarily reside in Montana"); *accord Heller Fin. Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (affirming denial of transfer where "transferring the case [would] only shift[ ] the inconvenience to [plaintiff]" (internal citations omitted)); *see also Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient."); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (where transferee venue "is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected").

The University's burden in this analysis "is high," in that it "must make a clear showing of facts which establish such oppression and vexation . . . as to be out of proportion to plaintiff's convenience . . .." *CollegeNet, Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926, 945 (D. Or. 2018), quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002).  Merely asserting that litigating in Columbia Sportswear's home state is "inconvenient" because the University is in New York does not come close to meeting that burden.

### C.    The convenience of witnesses does not warrant transfer.

The University also fails to explain how the convenience of any witness would be served by transferring this case.  Indeed, notwithstanding that it had over three months to prepare its Motion (*cf.* ECFs 7, 25), the University does not specifically identify a single individual witness who resides in New York, period.  That failure alone is fatal to the University's argument. *See Heller Fin., Inc.*, 883 F.2d at 1293 ("vague generalizations" about witnesses insufficient to support transfer request; instead, movant "was obligated to clearly specify the key witnesses to be called and make at least a generalized statement of what their testimony would have

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

included"); *adidas Am., Inc. v. Ath. Propulsion Labs, LLC*, 2016 U.S. Dist. LEXIS 92770, at *12-13 (D. Or. July 18, 2016) (discounting witness convenience arguments where defendant "relies on the general assertion that all of [its] employees work and reside in southern California," but "fails to identify any specific witness who will be called to testify"). And even if the Court credits the University's generalizations, they do not outweigh Columbia Sportswear's interest in litigating this case in Oregon.

For example, the University claims that "its witnesses," "[i]ts employees," and "[i]ts campus" are in New York (ECF 25 at 39-40), but ignores that Columbia's witnesses, employees, and campus are in Oregon. (*See* pp. 8-10 and Section VI.B above; Kelly Decl. ¶¶ 14-24.) The University also notes that its store is managed by Barnes & Noble—a large national chain—but again does not identify any individuals who may have relevant testimony to provide. (*See* ECF 25 at 39-40.) To the extent Barnes & Noble may have relevant *documents* concerning the University's sales, the University also does not contend that it is somehow unable to obtain such documents from its sales representative directly, rendering those materials and information subject to direct party discovery. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (in assessing "possession, custody, or control" for discovery purposes, "Control is defined as the legal right to obtain documents upon demand." (citation and internal quotes omitted)). In any event, "advances in videoconferencing technology and the corresponding growth of remote depositions has rendered the location of witnesses less important in an analysis of a motion to transfer." *Balestrieri v. SportsEdTV, Inc.*, 2025 U.S. Dist. LEXIS 194373, at *12 (N.D. Cal. Sept. 16, 2025) (citing, *inter alia*, *Panavision Int'l L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998) ("[T]he location of the evidence and witnesses… is no longer weighed heavily given the modern advances in communication and transportation.") and *Salebuild, Inc. v. Flexisales, Inc.*, 633 F. App'x 641, 643 (9th Cir. 2015) ("[I]n this age of robust video conferencing technology, one would expect relative travel costs to be a non-issue, regardless of the precise

Page 29 - PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

number of witnesses present in either locale.")); [21] *see also Wilwerding v. Edwards*, 2008 U.S. Dist. LEXIS 115696, at *9-10 (D. Or. Aug. 13, 2008) (even where "vast majority of non-party witnesses" were contended to be in Texas, explaining ease of using remote testimony at trial and denying transfer), *rep. & rec. adopted*, 2008 U.S. Dist. LEXIS 74502 (D. Or. Sept. 25, 2008).

This factor does not weigh in favor of transfer.

**D.      Ease of access to sources of proof does not warrant transfer.**

The University's discussion of "ease of access to sources of proof" is similarly unconvincing.  (ECF 25 at 34-35.)  As with its discussion of witnesses, essentially the entirety of the University's argument centers around where *its* documents are located, ignoring entirely that all of *Columbia Sportswear's* documents are located in Oregon, as detailed at pp. 9-10 above. *See Decker Coal.*, 805 F.2d at 843 (9th Cir. 1986) (notwithstanding that conditions at coal plants in Illinois and Indiana were central to anticipated defense, "[w]e do not feel that these factors are sufficient" to require transfer, which "would merely shift rather than eliminate the inconvenience"), and other authority cited in Section VI.B above.

The University also cites *Wheel Pros, LLC v. Performance Tire*, 2017 WL 6017292 (C.D. Cal. Apr. 24, 2017), for the proposition that in trademark cases, "the place where the defendant's documents are kept weighs in favor of transfer to that location."  (ECF 25 at 40.)  But the University omits the *Wheel Pros* court's explanation of its rationale in the next paragraph:

> Although transporting documents does not generally create a burden due to technological advances in document storage and retrieval, the evidence here is not just documents, but also potentially the wheel tires and the design models themselves.  This evidence would be burdensome to transport to Los Angeles, and the parties would likely achieve little efficiency from litigating the case in this district.

*Wheel Pros.*, 2017 WL 6017292 at *10 (citations and internal markings omitted).  Here, the infringing products are not heavy vehicle wheels, but apparel that the University ships all over the country every day, and it is speculative to suppose that many of the articles themselves (as

---

[21] While the University cites a handful of district court cases that have nonetheless placed weight on this factor (ECF 25 at 39-40), it provides no Ninth Circuit authority on point.

Page 30 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO
COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

opposed to photographs) would be needed for this litigation. Importantly, the *Wheel Pros.* court also found "little efficiency" from litigating in C.D. Cal. because unlike here, that was not the plaintiff's home forum. *Id.* at \*9. In more analogous cases, this court has had no problem denying transfer of trademark claims in the face of similar defendant arguments.[22] Indeed, in a published opinion involving a New York trademark defendant who made nearly identical arguments to the University's here, Judge Simon found the "ease of access to sources of proof" factor—including both witnesses and evidence—to be "neutral" and denied transfer out of Adidas' chosen forum. *Cougar Sport*, 169 F. Supp. 3d at 1096-97.

Finally, in a transparent attempt to thumb the scale on the merits, the University argues that "any evidence of actual confusion[] is likely to be centered in and around New York," including "potential surveys." (ECF 25 at 41.) That is untrue. The contract at issue in this case came about because the University wanted Columbia Sportswear's permission to sell "Columbia"-branded products ***in 48 countries***, including the United States. (Kelly Decl. ¶ 9; Exs. 4, 5.) The University cannot sell infringing merchandise in Oregon, Alabama, New Mexico, Hawaii, Morocco, Portugal, Kuwait, and elsewhere, and then claim that any "likelihood of confusion" issue depends on the perception of consumers next door to it on Amsterdam Avenue in Manhattan. Any such survey would be prejudicial and potentially subject to exclusion,[23] let alone providing a reason to transfer this case.

---

[22] *See, e.g., Adidas Am., Inc. v. Aviator Nation, Inc.*, 2020 U.S. Dist. LEXIS 142068, at \*9-10, \*13 (D. Or. Aug. 5, 2020); *AutoBidMaster, LLC v. Alpine Auto Gallery, LLC*, 2015 U.S. Dist. LEXIS 65202, \*26-27 (D. Or. April 8, 2015); *Ath. Propulsion Labs*, 2016 U.S. Dist. LEXIS 92770 at \*17; *Exact Order Specialties v. Glow Indus.*, 2012 U.S. Dist. LEXIS 117170, at \*20-21 (D. Or. Aug. 20, 2012); *Benchamde Knife Co. v. Benson*, 2010 U.S. Dist. LEXIS 23963, at \*15-17 (D. Or. Mar. 15, 2010).

[23] *E.g. Citizens Fin. Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 121 (3rd Cir. 2004) (excluding consumer survey "because [the] methodology was fundamentally flawed [as it polled consumers outside the marketplace] and because the danger of undue prejudice far outweighed the limited probative value of the survey").

Page 31 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO
            COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
            TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

### E.    Familiarity with applicable law and other public interest factors do not warrant transfer.

Finally, the University argues that because the Southern District of New York allegedly has "significant experience adjudicating cases involving trademarks and the Lanham Act" (ECF 25 at 30-31), it is more capable than this Court of handling this case. But the Lanham Act is federal law, and "both this district and the Southern District of New York are equally capable of deciding such claims." *Cougar Sport*, 169 F. Supp. 3d at 1095-96 (denying transfer of federal and state trademark claims).[24]  Indeed, when a plaintiff in C.D. Cal.—which has heard its share of Hollywood trademark cases—sought to *avoid* transfer to Montana on the basis of the California district court's supposed subject matter expertise, the court responded, "all federal courts handle trademark cases; the suggestion that the District of Montana is a less appropriate forum because it lacks the experience in trademark matters of the courts in this district is both an affront to that court and an illusion to be ignored." *Blue Sky Color of Imagination, LLC v. Noteworthy Paper & Press, Inc.*, 2020 WL 12893717, at *6 (C.D. Cal. Feb. 28, 2020) (citation and internal markings omitted).  As the *Blue Sky* court implicitly recognized, U.S. courts in different local jurisdictions should not divide cases between them based on the federal cause of action being asserted.

Moreover, Columbia Sportswear's Fifth and Sixth Claims for Relief arise under Oregon common law (ECF 21 at 34-35), which this Court *is* better equipped to adjudicate than the Southern District of New York.  *See Exact Order*, 2012 U.S. Dist. LEXIS 117170, at *20-21 ("Exact also brings claims under Oregon law, with which this court has greater familiarity . . .").  And while it does not contain an express choice-of-law provision, Columbia Sportswear also intends to establish that the parties' agreement—which gives rise to the breach of contract claims

---

[24] *See also, e.g., Aviator Nation*, 2020 U.S. Dist. LEXIS 142068, at *11 (similar); *AutoBidMaster*, 2015 U.S. Dist. LEXIS 65202 at *26-27 (similar); *Ath. Propulsion Labs*, 2016 U.S. Dist. LEXIS 92770, at *14 (similar); *Exact Order*, 2012 U.S. Dist. LEXIS 117170, at *20-21 (similar).

Page 32 -  PLAINTIFFS' RESPONSE IN OPPOSITION TO COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

in its first and second causes of action—is governed by Oregon law.  (*See* fn. **Error! Bookmark not defined.** above.)

Nor do any of the other public factors counsel transfer.  As detailed in Sections IV.C and VI.A above, Oregon has a "strong interest" in this litigation brought by a major Oregon employer to enforce its trademark and contractual rights.  And while the University argues that injunctive relief may be more difficult for this court to administer than S.D.N.Y. (ECF 25 at 37), courts considering similar arguments have found the issue to be a drop in the bucket compared to other factors weighing against transfer.  *E.g. Cougar Sport*, 169 F. Supp. 3d at 1095-96 (request for injunctive relief weighed "slightly" in favor of transfer, denying transfer).  The University advances no argument concerning any other public interest factors.

In summary, the University "has not made a showing of inconvenience sufficient 'to warrant upsetting the plaintiff's choice of forum.'"  *Id.*, at 1097, quoting *Decker Coal*, 805 F.2d at 843.  Its transfer request should be denied.

## VII.    CONCLUSION

This case is not about Columbia University's campus sales in Manhattan, or its students' baseball uniforms.  For nearly 20 years, the University repeatedly solicited continuing agreements and cooperation from Columbia Sportswear specifically to facilitate its sales of branded apparel *worldwide*, including in Oregon.  Now that it has breached one of those agreements and begun selling infringing goods into Oregon and the rest of the country, it cannot seriously claim this lawsuit can only be heard in New York.  Columbia Sportswear respectfully submits that the University's Motion must be denied.

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460

Dated this 16th day of December, 2025.

          Respectfully submitted,

          SCHWABE, WILLIAMSON & WYATT, P.C.

          By:     *s/ Jason A. Wrubleski*
                    Nika Aldrich, OSB #160306
                    Jason A. Wrubleski, OSB #120524
                    Jason P. Evans, OSB #193573

                    *Attorneys for Plaintiffs*

Page 34 -   PLAINTIFFS' RESPONSE IN OPPOSITION TO
              COLUMBIA UNIVERSITY'S MOTION TO DISMISS OR
              TRANSFER

Schwabe, Williamson & Wyatt, P.C.
Attorneys at Law
1420 5th Ave., Suite 3400
Seattle, WA 98101
Telephone: 206-622-1711
Fax:206-292-0460