IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLUMBIA SPORTSWEAR COMPANY,
an Oregon corporation; COLUMBIA
SPORTSWEAR NORTH AMERICA, INC.,
an Oregon corporation; and COLUMBIA
BRANDS USA, LLC, an Oregon limited
liability company,

        Plaintiffs,

   v.

TRUSTEES OF COLUMBIA UNIVERSITY
IN THE CITY OF NEW YORK,

        Defendant.

Case No. 3:25-cv-01299-AB

OPINION & ORDER

Jason P. Evans
Jason A. Wrubleski
Schwabe, Williamson & Wyatt
1211 SW 5th Ave. Ste 1800
Portland, OR 97204

1 – OPINION & ORDER

Nicholas F. Aldrich, Jr.
Schwabe, Williamson & Wyatt
1420 5th Avenue Suite 3400
Seattle, WA 98101

       Attorneys for Plaintiffs

Andrea R. Meyer
Douglas R. Ricks
Sussman Shank, LLP
1000 SW Broadway Suite 1400
Portland, OR 97205

Sartouk H. Moussavi
Thompson Coburn LLP
55 East Monroe Ste 37th Floor
Chicago, IL 60603

Zachary G. Newman
Thompson Coburn LLP
488 Madison Avenue Ste 14th Floor
New York, NY 10022

       Attorneys for Defendant

**BAGGIO, District Judge:**

Plaintiffs Columbia Sportswear Company, Columbia Sportswear North America, Inc., and Columbia Brands USA, LLC bring this case against Defendant Trustees of Columbia University in the City of New York. Plaintiffs assert six claims for relief: (1) breach of contract; (2) breach of duty of good faith and fair dealing; (3) trademark infringement under 15 U.S.C. § 1114; (4) false designation of origin and unfair competition under 15 U.S.C. § 1125(a); (5) trademark infringement under Oregon common law; and (6) unfair competition under Oregon common law. First Am. Compl. ("FAC") ¶¶ 67–98, ECF No. 21. The Court refers to claims one and two as the "Contract Claims" and claims three through six as the "Trademark Claims."

Defendant moves to dismiss Plaintiffs' First Amended Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Def.'s Mot. Dismiss ("Def.'s Mot.")

2 – OPINION & ORDER

1, ECF No. 25. Alternatively, Defendant moves to transfer this case to the United States District Court for the Southern District of New York under 28 U.S.C. § 1404(a). *Id.* For the following reasons, the Court denies Defendant's Motion.

## BACKGROUND

This action concerns Defendant's allegedly unlawful use of Plaintiffs' registered word mark: "COLUMBIA." FAC ¶¶ 1–2, 30. Plaintiffs are the owner of U.S. Registration No. 2047397, which covers use of the mark "COLUMBIA" on various goods. FAC ¶ 30. Plaintiffs feature the mark "in its stores and in its advertising," and it "is either the sole or the dominant portion of its name in corporate advertising . . . ." FAC ¶ 32.

Defendant "is a private institution of higher education located in New York, New York." FAC ¶ 7. Defendant "was founded in 1754 as King's College," but was renamed to "Columbia College in 1784 . . . ." FAC ¶ 34 (internal quotation marks omitted). Defendant does not hold itself out as an apparel company but "has a bookstore that . . . sells Columbia University-themed apparel." FAC ¶ 36.

In light of Defendant's intent to sell "Columbia University-themed apparel[,]" the parties—over the course of twenty years—have executed various agreements allowing the parties to "peacefully coexist[]." FAC ¶¶ 10, 35–36. For example, in 2006, the parties entered into a consent agreement in which Plaintiffs gave Defendant consent "to sell 'Columbia'-branded apparel and other items in Korea." FAC ¶ 10. In 2015, the parties entered into another agreement in which Plaintiffs gave Defendant "consent to use the 'Columbia' mark on apparel in China . . . ." FAC ¶ 11. And in 2019, Plaintiffs executed a letter of consent in which Plaintiffs gave Defendant consent to use a Columbia-themed mark in Brazil. FAC ¶ 12.

3 – OPINION & ORDER

Most recently, in 2023, the parties executed an agreement (the "2023 Agreement") in which Plaintiffs consented to Defendant registering and using "the word COLUMBIA . . . on apparel and accessories in forty-eight nations around the world, including the United States." FAC ¶ 37. The 2023 Agreement contains terms similar to the parties' 2015 agreement. FAC ¶ 42. Those terms provide that Plaintiffs consent to Defendant's use and registration "of the term COLUMBIA . . . on condition that any use and registration . . . is only in conjunction with at least one other indicia of [Defendant] . . . ." FAC ¶ 42; *see also* FAC ¶ 43 (showing pictures of the applicable indicia). In exchange, Plaintiffs "agreed, among other things, not to sue" Defendant. FAC ¶ 45.

In September 2024, however, after the parties executed the 2023 Agreement, Plaintiffs "became aware of numerous apparel items for sale on [Defendant's] webstore . . . that used the name COLUMBIA without any other University Indicia"—(the "Infringing Merchandise"). FAC ¶ 46; *see also* FAC ¶ 47 (showing examples of the Infringing Merchandise). Subsequently, Plaintiffs contacted Defendant and requested that Defendant cure its breach of the 2023 Agreement and cease selling the Infringing Merchandise. FAC ¶ 56. Defendant did not cure its breach and did not cease selling the Infringing Merchandise. FAC ¶¶ 57–58.

To this day, Defendant continues to sell its Infringing Merchandise. FAC ¶ 61. Defendant's Infringing Merchandise is accessible in the State of Oregon, across the country, and internationally. FAC ¶ 17. For example, in October 2025, Defendant "fulfilled orders for three articles of Infringing Merchandise by shipping the articles directly from an address on the [Defendant's] campus in New York, New York to an address in Portland, Oregon." FAC ¶ 18. In addition, about 0.5% of Defendant's student body is from Oregon; thus, Plaintiffs allege that "hundreds if not thousands of . . . alumni reside in Oregon, and can be expected—along with

4 – OPINION & ORDER

their family members and other well-wishers—to procure University-themed merchandise from [Defendant's] online store." FAC ¶ 19.

## STANDARDS

### I.    Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), a party may move to dismiss a claim for lack of personal jurisdiction. "In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). "Before discovery and in the absence of an evidentiary hearing, . . . the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Burri L. PA v. Skurla*, 35 F.4th 1207, 1213 (9th Cir. 2022) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). In such cases, the court only inquires into the plaintiff's pleadings and affidavits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004) (citing *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995)). The court "must accept as true all uncontroverted allegations in the plaintiff's complaint and must resolve all disputed facts in favor of the plaintiff." *Burri L. PA*, 35 F.4th at 1213; *see also Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("We may not assume the truth of allegations in a pleading which are contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." (citation modified)).

"When no federal statute governs personal jurisdiction, the district court applies the law of the forum state." *Boschetto*, 539 F.3d at 1015. In Oregon, courts exercise personal jurisdiction to the extent allowed by the Due Process Clause of the Constitution. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (per curiam) (citing Or. R. Civ. P. 4 L). Therefore,

5 – OPINION & ORDER

"the jurisdictional analyses under state law and federal due process are the same."

*Schwarzenegger*, 374 F.3d at 801.

## II.    28 U.S.C. § 1404

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." This section "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). A motion to transfer venue under § 1404(a) has two parts. First, the court determines whether the action could have been brought in the transferee court. *See Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960). Second, if the moving party makes this threshold showing, the court weighs multiple factors to determine "whether transfer is appropriate in a particular case." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). Such factors include: "(1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations." *USI Ins. Servs., LLC v. Aitkin*, No. 2:21-cv-00267-HZ, 2022 WL 3974535, at *2 (D. Or. Sept. 1, 2022) (quoting *Amini Innovation Corp. v. JS Imports, Inc.*, 497 F. Supp. 2d 1093, 1109 (C.D. Cal. 2007)).

## DISCUSSION

Defendant moves to dismiss Plaintiffs' First Amended Complaint for lack of personal jurisdiction. Def.'s Mot. 13–28. Alternatively, Defendant moves to transfer this case to the

6 – OPINION & ORDER

United States District Court for the Southern District of New York. *Id.* at 28–35 The Court denies both Motions.

## I.       Personal Jurisdiction

For the exercise of personal jurisdiction to comport with federal due process, the "defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 801 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The Supreme Court recognizes two types of personal jurisdiction: general and specific. *Bristol–Myers Squibb Co. v. Superior Ct. of California, S.F. Cnty.*, 582 U.S. 255, 262 (2017). Here, because Plaintiffs do not contend Defendant is subject to general personal jurisdiction, the Court only evaluates specific personal jurisdiction. *See* Pls.' Opp'n Def.'s Mot. ("Pls.' Resp.") 11 n.8, ECF No. 29.

> The Ninth Circuit applies a "three-prong test" to analyze specific personal jurisdiction:
>
> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). "The plaintiff bears the burden of satisfying the first two prongs[,]" and if the plaintiff fails to satisfy either prong, personal jurisdiction is not established. *Id.* If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the

7 – OPINION & ORDER

exercise of jurisdiction would not be reasonable." *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

### A.    Prong One

Under the first prong of the three-part jurisdiction test, Plaintiffs must establish that Defendant either purposefully availed itself of the privilege of conducting activities in Oregon or purposefully directed its activities toward Oregon. *See id.* Purposeful availment and purposeful direction are "two distinct concepts." *Id.* "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort." *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020). Both concepts, however, ultimately ask whether the defendant has "voluntarily derived some benefit from their interstate activities such that they 'will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.'" *Id.* (quoting *Burger King*, 471 U.S. at 474–75). "Indeed, the first prong 'may be satisfied by purposeful availment,' 'by purposeful direction,' or 'by some combination thereof.'" *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)).

Here, Plaintiffs bring claims sounding in contract, FAC ¶¶ 67–76, and in tort, FAC ¶¶ 77–98. *See Qemq, Inc. v. Geekland USA LLC*, No. 2:20-cv-02013-MCE-JDP, 2022 WL 4279857, at *6 (E.D. Cal. Sept. 15, 2022) (applying the purposeful availment test to a "breach of the implied covenant of good faith and fair dealing" claim); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 979 (9th Cir. 2021) ("Trademark infringement is treated as tort-like for personal jurisdiction purposes . . . ."). Thus, the Court finds both purposeful availment and purposeful

8 – OPINION & ORDER

direction applicable. However, because the Court finds Plaintiffs establish personal jurisdiction over Plaintiffs' Trademark Claims (purposeful direction), and because Plaintiffs Contract Claims arise from a common nucleus of operative facts with Plaintiffs' Trademark Claims,[1] the Court only addresses purposeful direction. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) ("If personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same common nucleus of operative facts as the claim for which jurisdiction exists." (internal quotation marks omitted)).

"To determine whether a defendant 'purposefully directed' its activities toward the forum, [courts apply] the 'effects' test derived from" *Calder v. Jones*, 465 U.S. 783 (1984). *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023). The *Calder* effects test "requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 751 (9th Cir. 2025) (en banc).

Here, because Plaintiffs allege that Defendant has sold the Infringing Merchandise to Oregon residents, FAC ¶ 18, and that Plaintiffs have requested Defendant to cease selling the Infringing Merchandise, FAC ¶ 56, Plaintiffs establish the first and third elements of the *Calder* effects test, *see Herbal Brands*, 72 F.4th at 1091 (finding the first and third elements of the *Calder* effects test easily established where defendants sold products to Arizona residents (intentional act), and defendants received cease-and-desist letters informing them that their

---

[1] The Court finds Plaintiffs' Contract Claims and Trademark Claims ultimately both arise from Defendant's sales of its Infringing Merchandise—the same nucleus of operative facts. *See, e.g.*, FAC ¶¶ 70, 80.

9 – OPINION & ORDER

actions were causing harm in Arizona (harm)).[2] The second element—whether Defendant expressly aimed its conduct at Oregon—is a closer call.

In *Herbal Brands*, the Ninth Circuit held that "if a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum, the defendant 'expressly aimed' its conduct at that forum." *Id.* at 1093. In other words, "the sales of physical products into a forum via an interactive website can be sufficient to establish that a defendant expressly aimed its conduct at the forum, provided[:]" (1) "the sales . . . occur[ed] as part of the defendant's regular course of business instead of being random, isolated, or fortuitous[,]" and (2) "the defendant . . . exercise[ed] some level of control over the ultimate distribution of its products beyond simply placing its products into the stream of commerce." *Id.* at 1094 (internal quotation marks omitted).

Here, Plaintiffs allege that Defendant's sales of Infringing Merchandise into Oregon occur as part of Defendant's regular course of business. *See* FAC ¶ 18 ("As part of [Defendant's] and/or its vendors' regular course of business, any order for Infringing Merchandise placed through [Defendant's] online webstore from Oregon is fulfilled, with all products packed and shipped from [Defendant's campus in New York] to the purchaser in Oregon." (internal quotation marks and ellipses omitted)). Moreover, Plaintiffs allege that Defendant exercises control over its distribution by selling the Infringing Merchandise "on its online webstore that is accessible not only in the State of Oregon, but across the country . . . ." FAC ¶ 17; *see also*

---

[2] Defendant argues that the October 2025 purchase of Infringing Merchandise was an attempt by Plaintiffs to manufacture personal jurisdiction. Def.'s Mot. 22; Def.'s Reply 27–29, ECF No. 34. Such an argument, however, is better addressed under the "reasonableness prong" of the three-part specific personal jurisdiction test. *See Herbal Brands*, 72 F.4th at 1096–97 (explaining that the manufacturing of personal jurisdiction is "better addressed under the reasonableness prong").

10 – OPINION & ORDER

*Herbal Brands*, 72 F.4th at 1094–95 (finding defendants exercised control over their distribution because "they created and maintained a distribution network that reached the relevant forum by choosing to operate on a universally accessible website that accepts orders from residents of all fifty states and delivers products to all fifty states"). Taking these allegations as true, the Court finds they are sufficient to establish that Defendant expressly aimed its conduct at Oregon. *See id.* at 1095 ("[W]e hold that [d]efendants expressly aimed their conduct at Arizona because they allegedly sold products to Arizona residents via an interactive website in their regular course of business and caused those products to be delivered to the forum."); *see also Briskin*, 135 F.4th at 758 ("[A]n interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." (citation modified)).

Defendant challenges Plaintiffs' allegations, arguing that any sales of its Infringing Merchandise into Oregon "occurred outside of [Defendant's] regular course of business." Def.'s Mot. 22. Specifically, Defendant argues that because any sale of Infringing Merchandise into Oregon was "de minimus[,]" "such sales . . . should be considered random, isolated, or fortuitous, and not part of [Defendant's] regular course of business." Def.'s Mot. 23–24. Defendant's argument, however, is contrary to the Ninth Circuit's reasoning in *Herbal Brands*. There, the court concluded that "[t]he outcome of the express-aiming inquiry does not depend on the number of sales made to customers in the forum." *Herbal Brands*, 72 F.4th at 1095. The court reasoned that "[i]f one sale were not enough to establish that a defendant expressly aimed its conduct at a forum, we would face the difficult question of how many sales would suffice." *Id.* The court then reemphasized that a sale into the forum need only "occur in the defendant's regular course of business." *Id.* Here, the Court finds that Plaintiffs allege Defendant's sale of

11 – OPINION & ORDER

Infringing Merchandise into Oregon occurred as part of Defendant's regular course of business. Thus, the Court concludes that Plaintiffs establish the second element of the *Calder* effects test: Defendant expressly aimed its conduct at Oregon. And because Plaintiffs also establish the first and third elements of the *Calder* effects test, the Court further concludes that Plaintiffs establish purposeful direction—the first prong of the three-part specific personal jurisdiction test.[3]

### B.    Prong Two

Under the second prong of the three-part jurisdiction test, Plaintiffs must establish that their claims "arise[] out of or relate[] to [Defendant's] forum-related activities . . . ." *Schwarzenegger*, 374 F.3d at 802 (citation omitted). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Here, Plaintiffs' Trademark Claims—which allege harm caused by Defendant's sales of its Infringing Merchandise, *see, e.g.*, FAC ¶¶ 83, 91, 95—"clearly arise out of and relate to [Defendant's] conduct of selling [its Infringing Merchandise] to [Oregon] residents[,]" *Herbal*

---

[3] Defendant also argues that any sales of its Infringing Merchandise into Oregon occurs outside of its regular course of business because Barnes and Noble operates the online webstore and because Defendant "does not control the website's functionality, payment process, order fulfillment, or shipping." Def.'s Reply 25 (citing Def.'s Mot. Ex. 2, at ¶ 6, ECF No. 25-2). Defendant's argument, however, raises questions of fact as to its efforts "to serve directly or indirectly, the market for its [Infringing Merchandise] in other States . . . ." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *see also Mavrix Photo*, 647 F.3d at 1223 ("[W]e resolve factual disputes in the plaintiff's favor."). Indeed, this is not a case where Defendant is selling "its [Infringing Merchandise] to a third party with no knowledge of that third party's intent to sell into a particular forum." *Herbal Brands*, 72 F.4th at 1095. Rather, as Plaintiffs allege, sales of Infringing Merchandise are fulfilled by the "Columbia University Store" and are "confirmed by correspondence bearing [Defendant's] name and insignia." FAC ¶ 18.

*Brands*, 72 F.4th at 1096; *see also* FAC ¶ 18 (alleging the sale of three articles of Infringing Merchandise by Defendant to an address in Portland, Oregon). Accordingly, the Court finds Plaintiffs establish the second prong of the three-part specific personal jurisdiction test.

C.    Prong Three

Under the third prong of the three-part jurisdiction test, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802 (internal quotation marks omitted). To evaluate reasonableness, courts balance seven factors:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Herbal Brands*, 72 F.4th at 1096 (quoting *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)).

Here, because Defendant argues the reasonableness factors under its venue-transfer analysis, the Court does the same. *See* Def.'s Mot. 27–28. Finding venue transfer inappropriate, however, *see* Discussion *infra*, Section II, the Court finds Defendant fails to establish that the exercise of jurisdiction would not be reasonable.[4]

\*\*\*

Because Plaintiffs establish the first and second prongs of the three-part specific jurisdiction test, and Defendant does not meet its burden on the third prong, the Court finds it

---

[4] To the extent Defendant argues that Plaintiffs manufactured jurisdiction through the October 2025 sale, Def.'s Mot. 22, such argument is speculative and does not controvert Plaintiffs' allegations; Plaintiffs' allegations, therefore, "must be taken as true[,]" *Mavrix Photo*, 647 F.3d at 1223.

13 – OPINION & ORDER

may assert specific personal jurisdiction over Plaintiffs' Trademark Claims. And because

Plaintiffs' Contract Claims arise from a common nucleus of operative facts with Plaintiffs'

Trademark Claims, the Court finds it may assert pendent personal jurisdiction over Plaintiffs'

Contract Claims. *See Picot*, 780 F.3d at 1211. For these reasons, the Court denies Defendant's

Motion to Dismiss for lack of personal jurisdiction.

## II.  Venue Transfer

As stated, in evaluating a motion to transfer under 28 U.S.C. § 1404(a), courts weigh "a

number of case-specific factors."[5] *Stewart*, 487 U.S. at 29. These include "(1) the plaintiff's

choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the

location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7)

administrative considerations." *USI Ins. Servs.*, 2022 WL 3974535, at *2  (quoting *Amini

Innovation*, 497 F. Supp. 2d at 1109); *see also Jones*, 211 F.3d at 498–99 (listing other factors

such as "the location where the relevant agreements were negotiated and executed" and  "the

contacts relating to the plaintiff's cause of action in the chosen forum").

Defendant argues these factors collectively weigh in favor of transfer. Def.'s Mot. 30–35;

Def.'s Reply 31–33. Plaintiffs respond that Defendant fails to satisfy its burden that transfer is

appropriate. Pls.' Resp. 26–33. The Court agrees with Plaintiffs.

### A.  Plaintiffs' Choice of Forum

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of

forum . . . ." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). Indeed, a "defendant must

---

[5] Because Plaintiffs do not dispute that this action could have been brought in the United
States District Court for the Southern District of New York, the Court does not address this
threshold issue.

14 – OPINION & ORDER

make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

Here, Defendant argues that Plaintiffs' choice of forum is entitled to less deference because Defendant's allegedly unlawful activities occurred outside the forum. Def.'s Mot. 32 (citing *Adobe Sys. Inc. v. Trinity Software Distrib., Inc.*, No. C 12-1614 SI, 2012 WL 3763643, at *8–9 (N.D. Cal. Aug. 29, 2012)). But "[a] forum state has a strong interest 'in protecting its citizens from the wrongful acts of nonresident defendants.'" *Columbia Sportswear N. Am., Inc. v. Ventex Co.*, No. 3:17-cv-623-SI, 2019 WL 4783105, at *8 (D. Or. Sept. 30, 2019) (quoting *Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995)). Here, Plaintiffs are "organized and exist[] under the laws of the State of Oregon" and have their principal places of business in Oregon. FAC ¶¶ 4–6. Thus, this Court has a strong interest in protecting Plaintiffs from the allegedly wrongful acts of Defendant—a nonresident. Moreover, even if some of the acts giving rise to Plaintiffs' claims occurred outside this forum, at least as many acts occurred in this forum, including the execution of the 2023 Agreement—which required Plaintiffs' consent—and Defendant's shipment of Infringing Merchandise to Portland, Oregon. *See* FAC ¶¶ 13, 18. Accordingly, this factor weighs against transfer.

B.      Convenience of the Parties

Defendant argues that it will be more convenient for the parties to litigate this dispute in the Southern District of New York because Defendant is located in New York, Defendant performs effectively none of its activities in Oregon, and Plaintiffs have a physical presence in and around New York. Def.'s Mot. 30, 32. Defendant's arguments however, "merely shift rather than eliminate the inconvenience." *Decker Coal*, 805 F.2d at 843. Indeed, "essentially all of

15 – OPINION & ORDER

[Plaintiffs'] operations, documents, and employees are located in and around the Portland metro area." Pls.' Resp. 27. Accordingly, this factor is neutral at best.

### C.    Convenience of the Witnesses

The convenience of the witnesses is often the most important factor in a transfer analysis. *CollegeNet, Inc. v. Common Application, Inc.*, 355 F. Supp. 3d 926, 962 (D. Or. 2018). Here, Defendant argues that it will be more convenient for the witnesses if this dispute is litigated in the Southern District of New York because "the vast majority of key witnesses and evidence are located in New York or its surrounding area" and almost all of Defendant's sales of its Infringing Merchandise occurred in New York. Def.'s Mot. 33–34. Plaintiffs respond, however, that its witnesses are located in Oregon. Pls.' Resp. 29. Thus, much like the previous factor, transfer would "merely shift rather than eliminate the inconvenience" to witnesses. *Decker Coal*, 805 F.2d at 843. Accordingly, this factor is neutral at best.

### D.    Location of Books and Records

Defendant argues that transfer is appropriate because the "[d]ocuments and records relevant to this action are located in New York" and because the Infringing Merchandise is in New York. Def.'s Mot. 34–35. But as this Court has held, "transporting documents does not generally create a burden due to technological advances in document storage and retrieval." *Adidas Am., Inc. v. Cougar Sport, Inc.*, 169 F. Supp. 3d 1079, 1097 (D. Or. 2016) (internal quotation marks omitted). Moreover, as Plaintiffs identify, to the extent the Court needs to view the Infringing Merchandise, Defendant does not explain why photographs cannot suffice. Pls.' Resp. 30–31. Accordingly, this factor is neutral.

///

///

16 – OPINION & ORDER

E.      Which Forum's Law Applies

Defendant argues that because the Southern District of New York has significant experience adjudicating trademark disputes and will likely be in a better position to enforce injunctive relief, this factor favors transfer. Def.'s Mot. 30–31. But the 2023 Agreement "does not include a choice of law provision and therefore does not refer to the law of any specific jurisdiction." *Id.* at 30. Moreover, Plaintiffs' claims arise under federal and Oregon law—not New York law. *See* Pls.' Resp. 32. Thus, although the Southern District of New York may "be better able to administer and enforce an injunction against [Defendant,]" *Adidas Am.*, 169 F. Supp. 3d at 1096, the Court finds this factor is neutral; this Court is equally capable of resolving federal claims and arguably better equipped to adjudicate claims arising under Oregon law, *see Adidas Am., Inc. v. Aviator Nation, Inc.*, No. 3:19-cv-02049-HZ, 2020 WL 9594397, at *4 (D. Or. Aug. 5, 2020).

F.      Interests of Justice

As to other factors bearing on the interests of justice, the Court finds that they are at best neutral. For example, the 2023 Agreement was negotiated and executed by both parties from their respective forums. *See* Def.'s Mot. 12 (explaining that no one traveled to Oregon on behalf of Defendant to negotiate the 2023 Agreement and that the employee who executed the 2023 Agreement on behalf of Defendant was located in New York or the surrounding area). Moreover, Plaintiffs' claims arise directly from Defendant's contacts with Plaintiffs in this district. *See* FAC ¶¶ 10–14 (alleging that for each of the consent agreements and beyond, Defendant has reached out to Plaintiffs). For all these reasons, the Court finds that transfer of this case to the Southern District of New York is inappropriate. Defendant has not made a strong showing of

17 – OPINION & ORDER

inconvenience to upset Plaintiffs' choice of forum, and transferring this case would merely shift inconvenience to Plaintiffs. Accordingly, the Court denies Defendant's Motion to Transfer.

## CONCLUSION

The Court DENIES Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) or Transfer Under 28 U.S.C. § 1404(a) [25].

IT IS SO ORDERED.

DATED this __1st__ day of May, 2026.

_____
AMY M. BAGGIO
United States District Judge

18 – OPINION & ORDER