IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

COLUMBIA SPORTSWEAR COMPANY, an Oregon corporation; COLUMBIA SPORTSWEAR NORTH AMERICA, INC., an Oregon corporation; and COLUMBIA BRANDS USA, LLC, an Oregon limited liability company,

Plaintiffs,

v.

TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK,

Defendant.

Case No. 3:25-cv-01299-AB

OPINION & ORDER

Jason P. Evans
Anne M. Talcott
Jason A. Wrubleski
Schwabe, Williamson & Wyatt
1211 SW 5th Ave. Ste 1800
Portland, OR 97204

Nicholas F. Aldrich, Jr.
Schwabe, Williamson & Wyatt
1420 5th Avenue Suite 3400
Seattle, WA 98101

Attorneys for Plaintiffs

Andrea R. Meyer
Douglas R. Ricks
Sussman Shank, LLP
1000 SW Broadway Suite 1400
Portland, OR 97205

Sartouk H. Moussavi
Thompson Coburn LLP
55 East Monroe Ste 37th Floor
Chicago, IL 60603

Craig Robert Haughton
Zachary G. Newman
Thompson Coburn LLP
488 Madison Avenue Ste 14th Floor
New York, NY 10022

Attorneys for Defendant

**BAGGIO, District Judge:**

Plaintiffs move to compel Defendant to produce all documents in its possession and the possession of Cowan, Liebowitz & Latman, P.C. ("Cowan") relating to a 2023 consent agreement executed by the parties (the "2023 Agreement").[1] Pls.' Mot. Compel 10, ECF No. 59. Plaintiffs request documents through June 3, 2025. *Id.* Plaintiffs also request that the Court order that Defendant's witnesses, including Cowan, may not invoke privilege concerning the same. *Id.* For the following reasons, the Court grants in part and denies in part Plaintiffs' Motion.

## STANDARDS

The attorney-client privilege exists "to encourage full and frank communication between attorneys and their clients." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege, however, "may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil*

[1] The 2023 Agreement addressed Defendant's use of the term "Columbia" in various countries, including the United States. First Am. Compl. ¶ 13, ECF No. 21; Def.'s Answer & Countercls. 43, ¶¶ 90–91, ECF No. 38.

*Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Thus, "[w]here a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived." *Id.* Implied waiver "occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). "[A]n overarching consideration is whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party." *Id.* (quoting *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). "[T]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc).

**DISCUSSION**

Plaintiffs argue that Defendant has implicitly waived the attorney-client privilege for all documents relating to the drafting and formation of the 2023 Agreement through June 3, 2025, because Defendant asserts an affirmative defense and brings counterclaims seeking reformation of the 2023 Agreement based on a drafting mistake of its outside trademark counsel—Cowan—necessarily putting Defendant's communications with Cowan at issue. *See* Pls.' Mot. Compel; *see also* Def.'s Answer & Countercls. 54, ¶ 138 ("[T]he inclusion of 'the United States' in the 2023 . . . Agreement was the product of an inadvertent clerical error by [Defendant's] outside trademark counsel, who copied the territory list . . . and inadvertently failed to remove the United States from the list."). The Court agrees with Plaintiffs, subject to some limitations.

As to the first prong of implied waiver, the Court finds that Defendant asserts the attorney-client privilege as a result of some affirmative act—in this case through an affirmative

defense and counterclaims. *See* Def.'s Answer & Countercls. 15–16 (asserting affirmative defense for reformation of the 2023 Agreement based on mutual mistake); *id.* at 50–55 (bringing counterclaims for reformation of the 2023 Agreement based on mutual and unilateral mistake); *see also Klemp v. Columbia Collection Serv., Inc.*, No. 3:13-CV-01577-PK, 2014 WL 204013, at *3 (D. Or. Jan. 17, 2014) (finding the assertion of privilege as a result of filing counterclaims sufficient to establish the first prong of implied waiver).

As to the second prong of implied waiver, the Court finds that Defendant, by seeking reformation of the 2023 Agreement based on a mistake of counsel, has put its privileged communications with Cowan at issue. *See generally* Restatement (Second) of Contracts § 155 cmt. a (1981) ("The province of reformation is to make a writing express the agreement that the parties intended it should."). The Court finds *Galt Capital, LLP v. Seykota*, No. CIV. 2002-63, 2004 WL 298400 (D.V.I. Feb. 9, 2004) persuasive. In *Galt*, the plaintiffs argued that the defendant had waived the attorney-client privilege for communications with the defendant's attorney after the defendant counterclaimed based on mutual and unilateral mistake relating to an agreement negotiated and executed by the attorney on behalf of the defendant. *Id.* at *1–2. The court agreed that the defendant waived privilege, reasoning that the defendant's counterclaims placed his communications with his attorney at issue: "Without questioning [attorney] about the content of his discussions with [the defendant], [the plaintiffs] cannot verify whether [attorney] accurately represented [the defendant's] intentions in drafting the separation agreement, and, ultimately whether there was indeed a mistake." *Id.* at *2; *see also id.* (further reasoning that the defendant "cannot use his attorney to negotiate a separation agreement on his behalf and willingly sign that agreement, later claim he did not understand its terms, then interpose the attorney-client privilege to shield from discovery his discussions with and instructions to" his

attorney). Here, like *Galt*, Defendant has put its communications with Cowan at issue because, without questioning Cowan about its communications with Defendant, Plaintiffs have no way to contest whether Cowan's addition of the United States to the 2023 Agreement was indeed a mistake. Defendant cannot shield its discussions and instructions to Cowan regarding the 2023 Agreement while also arguing that Cowan made a mistake in drafting the agreement.

As to the third prong of implied waiver, the Court finds that allowing the privilege in this case would deny Plaintiffs access to information vital to defend themselves against Defendant's affirmative defense and counterclaims. Indeed, without discovery into Defendant's communications with Cowan regarding the drafting and formation of the 2023 Agreement, Plaintiffs have no way to dispute whether Cowan mistakenly included the United States in the 2023 Agreement. *See Bittaker*, 331 F.3d at 719 ("[P]arties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials.").

For these reasons, the Court finds that Defendant has implicitly waived the attorney-client privilege for communications between Defendant and Cowan relating to the drafting and formation of the 2023 Agreement—specifically, communications regarding inclusion of the United States in the 2023 Agreement. Defendant is thus directed to produce all communications on this topic no later than December 18, 2026—the fact discovery deadline. *See* Order, ECF No. 43. The Court further orders that Defendant's witnesses, including witnesses from Cowan, may not invoke privilege regarding the same. The Court, however, finds that Plaintiffs are not entitled to privileged communications between Defendant and Cowan beyond those communications concerning inclusion of the United States in the 2023 Agreement. The Court finds such communications are not vital to Plaintiffs' defense. *See Bittaker*, 331 F.3d at 720 ("Because a

waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose."). To the extent there are disputes about the privilege of certain communications, the parties may request the Court conduct an *in camera* review.

**CONCLUSION**

The Court GRANTS in part and DENIES in part Plaintiffs' Motion to Compel [59].

IT IS SO ORDERED.

DATED this 24th day of November, 2026.

AMY M. BAGGIO
United States District Judge